## Lee E. Miller, Appellant, v. Chicago Transit Authority, Appellee.

### Gen. No. 46,176.

Opinion filed July 2, 1954. Rehearing denied July 30, 1954. Released for publication September 14, 1954.

JOSEPH BARBERA, of Chicago, for appellant.

THOMAS C. STRACHAN, JR., JAMES O. DWIGHT, GEOFFREY B. FLEMING, ARTHUR J. DONOVAN, HALBERT O. CREWS, all of Chicago, for appellee.

Mr. Presiding Justice Feinberg delivered the opinion of the court.

Plaintiff recovered a verdict and judgment for $500 in this action for personal injuries resulting from the alleged negligence of defendant. Plaintiff filed a motion for new trial, based upon the grounds of inadequacy of the verdict and prejudicial conduct on the part of counsel for defendant. The motion was overruled, judgment was entered, and plaintiff appeals.

There is no dispute in the record as to the liability of defendant. Plaintiff was a passenger in one of two elevated cars of defendant involved in a collision, and sustained injuries.

It appears from the evidence that immediately after the accident, plaintiff was taken to Michael Reese Hospital, where a medical examination disclosed that plaintiff had a limited motion of the cervical spine of the neck region; laceration and bleeding of the upper lip; a bloody discharge from the nostrils; abrasions of the skin and discolored areas on both shins; numbness at the base of the skull on the right side upon head movement; and acute deafness of the right ear. It also appeared that in the process of putting plaintiff to bed at the hospital, plaintiff became dizzy and started to fall. He was confined to the hospital for four days. Shortly thereafter, the attending physician observed a frequent twitch in the upper part of the right cheek and the eyelid. He testified that in his opinion there was a causal connection between the accident and the state of illbeing, and that the condition of the twitching was a permanent one.

It also appears that the medical bills, exclusive of the hospital charges, amounted to $300, and that due to his injuries, he suffered some loss in earnings.

Plaintiff, upon the trial, was successfully impeached as to the complaint of loss of hearing, by a showing

that he had a previous accident, as a result of which he complained of loss of hearing, and recovered upon his claim for damages.

The jury having found defendant guilty of the undisputed negligence, plaintiff was entitled to recover reasonable damages for his injuries involved in the instant accident. Even if we eliminate any allowance for the condition of deafness complained of, we are convinced, upon this record, that the amount of the verdict is wholly inadequate. *Ritholz v. Yellow Cab Co.*, 319 Ill. App. 115; *Jensen v. City of Chicago*, 306 Ill. App. 265; *Novitsky v. Boland*, 322 Ill. App. 698; *Borkstrom v. South Shore Garages, Inc.*, 323 Ill. App. 285.

It is also clear to us that the verdict was induced by the prejudicial conduct of defendant's counsel. The following appears in the record upon the cross-examination of plaintiff:

"Q. Mr. Miller, I notice that you have changed the way you talk. Do you remember talking to me sometime ago when we took your testimony?
A. I recall, sir.
Q. Yes. And you talked very freely at the time?
Mr. Barbera: Very what?
Q. Very freely, instead of hesitating, do you remember that?
Mr. Barbera: Well, I object to that.
The Court: Just a moment.
The Witness: I recall I talked to you, yes sir.
Mr. Barbera: I object to that question.
The Court: Sustained. I don't know what you mean, 'very freely.'
Q. I mean without the halting way he is talking now. *And I will prove he talked entirely different when we took his deposition.*

The Court: All right.

Q. I took your testimony on May 18th in Mr. Barbera's office, didn't I?

A. I think you did.

Q. And you talked very glibly in your answers, didn't you?

Mr. Barbera: I object to that question 'very glibly.'

The Court: Sustained.

Q. Well, you talked very freely, didn't you?

Mr. Barbera: I object to that. I don't think he has been unfree.

The Court: He may answer that question.

Q. You are talking now entirely different than when I took your testimony on May 18th, isn't that a fact?

Mr. Barbera: I object to that question, 'entirely different.' I don't quite understand what he means.

The Court: His manner of speech, you mean?

Q. His manner of speech.

The Court: He means, you are now using a different manner of speech than you used on that occasion. You may answer.

The Witness: If I am, I don't know. I don't know I'm doing it.

Q. You are using an entirely different manner of speech than you used when I took your deposition?

Mr. Barbera: I object to that.

The Court: That has been answered.

Q. All my questions you answered quickly and freely, didn't you?

A. I intend to now and intended to then.

Q. You did not hesitate in making your answers, you talked freely? Your speech was not slow then?

A. I don't know.

Q. And when you are playing cards over at the hotel, you are slow in your speech, are you?

A. I don't believe I am." (Italics ours.)

227

■■■■■■■■■■■■■■■■■■■

Obviously, such questions could give rise to an inference that plaintiff is a malingerer.

In *Gordon v. Checker Taxi Co.*, 334 Ill. App. 313, under the guise of laying the foundation for impeachment, a series of questions was asked of the plaintiff respecting a prior accident, in the very nature of which, plaintiff's claim would seriously be affected, and would tend to prejudice the jury if the impeachment was successfully established. However, there was no effort made to establish the impeachment. This court there said (pp. 318, 319):

"Innuendoes involved in such questions are sometimes more damaging than an effort to prove the impeaching facts. When no witness is offered to impeach plaintiff and, therefore, no opportunity for cross-examination presented, the prejudicial effect springing from such questions cannot always be overcome, and results in an unfair trial to a plaintiff. If, under the guise and pretense of laying a foundation for impeachment, a plaintiff could be asked questions that would affect her credibility, such as a supposed former conviction for a felony (ch. 51, § 1, Ill. Rev. Stat. 1947 [Jones Ill. Stats. Ann. 107.067]), where production of the record of conviction is not required, and no proof made or offered, when there is a denial of the fact; or suppose questions were asked concerning alleged conversation with others, which involves very damaging supposed admissions against interest, and though denied by the witness, no proof is offered to impeach, such type of cross-examination, if approved, could succeed in defeating many a meritorious cause.

". . .

"We cannot place our stamp of approval upon such trial practice. It does not result in a fair trial according to settled standards, and a verdict so obtained

should not be permitted to stand. *Wellner v. New York Life Ins. Co.*, 331 Ill. App. 360, 365."

In the instant case, we think the situation was aggravated by the statement of counsel, "I will prove he talked entirely different when we took his deposition," although no proof was offered to support this statement.

■ In *Wellner v. New York Life Ins. Co.*, 331 Ill. App. 360, 365, this court said:

"The defendant is entitled to a fair trial, free from prejudicial conduct of counsel, who in an argument undertakes to supply facts, or an inference favorable to the plaintiff not based upon any evidence in the record."

In an apparent effort on the part of defendant's counsel to discredit the testimony as to plaintiff's dizziness and his act of falling in the hospital, already referred to, the following occurred on cross-examination of plaintiff:

"Q. Well, do you drink?
Mr. Barbera: Oh, I object to this.
The Court: Sustained."

Again on cross-examination, having reference to the previous accident sustained by plaintiff, the following question was put to plaintiff:

"Q. Were you drinking at that time?
Mr. Barbera: I object to that, if the Court please.
The Court: Sustained. It is immaterial."

■ ■ No effort was made to prove that plaintiff had been under the influence of liquor, as the questions might suggest, either at the time in question or at any other time. The highly prejudicial effect of such questions is not readily removed by the court's ruling sustaining objections thereto. *Bishop v. Chicago Junction Ry. Co.*, 289 Ill. 63, 69; *Bale v. Chicago Junction Ry.*

*Co.,* 259 Ill. 476; *Biniakiewicz v. Wojtasik,* 339 Ill. App. 574 (Abst.). We are compelled to hold that the verdict of the jury was the result of prejudice.

For the reasons stated, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

KILEY and LEWE, JJ., concur.