Donna Dunkelberger, Plaintiff-Appellant, v. James W. Hopkins, et al., Trustees, Shirley Carter, Thad Niemira, Trustee, Under Trust No. 47716, Joe Leo, et al., Defendants-Appellees.

Gen. No. 49,343.

First District, Third Division.

June 25, 1964.

Rehearing denied September 11, 1964.

Herbert A. Ellis, Arthur A. Ellis and Morris W. Ellis, of Chicago (Morris W. Ellis, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (John M. Moelmann, Oswell G. Treadway and Karl M. Tippet, of counsel), for appellee, Joe Leo. Heineke, Conklin & Schrader, of Chicago, for appellee, Shirley Carter. McKinley & Price, of Chicago, for appellees, Eric Hellman and Herbert Hellman.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

Plaintiff brought this action to recover for injuries allegedly received when the car in which she was riding as a passenger was driven into a cement abutment. Liability was predicated on Article VI, section 14 of the Liquor Control Act (c 43, § 135, Ill Rev Stats 1955), commonly referred to as the Dram Shop Act.

At the close of plaintiff's case, each of the Dram Shop defendants made separate motions for directed verdicts which were allowed by the trial judge; the jury returned a verdict of not guilty as to all of the defendants, and judgment was entered thereon.

Plaintiff's testimony in her own behalf was, essentially, as follows. She and her roommate and her roommate's boy friend visited the Tennessee Corral, a tavern in the City of Chicago, on December 14, 1956. James Hopkins was employed there as a musician. About 10:00 p. m. the said James Hopkins came

over to the booth where the plaintiff and her friends were sitting and started a conversation. While plaintiff's friends were still at the tavern, Mr. Hopkins asked plaintiff to stay until he finished work and said that they would then go and have a "bite to eat." Plaintiff's friends left at about 11:30 p. m., but plaintiff remained. During the course of the evening she noticed that the patrons of the tavern would purchase drinks and send them up to the members of the band, and that James Hopkins, being a member of the band, would join in the drinking. She had three drinks while she was there, but she did not buy any for Mr. Hopkins, nor did he buy any for her. During the breaks of the band, Mr. Hopkins would mingle with the patrons and would stop momentarily to talk to her, but at no time while they were at the Tennessee Corral did she drink with Mr. Hopkins. At approximately 3:15 a. m., December 15, 1956, after James Hopkins finished work, they left the Tennessee Corral and went to Tex Carter's, a nearby tavern, where Mr. Hopkins told her he was to meet some friends. Mr. Hopkins was sober at this time. When they arrived at Tex Carter's, they met three girls and two boys sitting in a booth. Plaintiff remained in the booth with the girls and drank a seven-up while Mr. Hopkins went to the bar with the boys and had a drink. They remained at Tex Carter's for about twenty or thirty minutes, and when they left Mr. Hopkins was still sober. She was under the impression that she was being taken somewhere to get something to eat. Instead, Mr. Hopkins drove her to the "66" Club, a tavern located to the west of the City of Chicago, about a forty-five minute drive from Tex Carter's. They arrived at the "66" Club at about 5:30 a. m. and stayed for about fifteen or twenty minutes. She had nothing to drink while she was there. After leaving the "66" Club, they went to the Pink Pony, another tavern in the area. She didn't

know that the Pink Pony was a tavern until they got there. While they were there she stayed in a booth while James Hopkins went to the bar. He brought her a drink and then returned to the bar where he was drinking. She took a few sips of her drink while sitting in the booth. He came back to the booth once more for a few minutes, but he did all of his drinking at the bar. They left the Pink Pony between 6:30 and 6:45 a. m. and started home. Upon getting back into the city Mr. Hopkins started to drive erratically, and when he came to a stop for a red light at or near 47th and Montrose, she asked him to pull over to the curb, but the light changed and "he stepped on the gas." She hollered a warning about the cement abutment and they then collided with it.

She also testified concerning the extent of her injuries and her lost time resulting from the accident.

In addition she put two doctors on the stand. One of her doctors had examined plaintiff and Mr. Hopkins shortly after the accident and he testified as to her sobriety and Mr. Hopkins intoxication. The other doctor testified in his capacity as attending physician concerning her injuries.

Plaintiff contends that by the above testimony she presented a prima facie case under the Dram Shop Act, and that the trial judge erred in directing the jury to find the issues in favor of the defendants.

Article VI, section 14 of the Liquor Control Act (c 43, § 135, Ill Rev Stats 1955), reads in pertinent part as follows:

> "Every person, who shall be injured, in person or property by any intoxicated person, shall have a right of action in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving alcoholic liquor, have caused the intoxication in whole or in part, of such person; and any person owning, renting,

leasing or permitting the occupation of any building or premises, and having knowledge that alcoholic liquors are to be sold therein, or who having leased the same for other purposes, shall knowingly permit therein the sale of any alcoholic liquors that have caused, in whole or in part, the intoxication of any person, shall be liable, severally or jointly, with the person or persons selling or giving liquors aforesaid, . . .”

■ As to defendant Joe Leo, the complaint alleged that he was engaged in the sale of intoxicating beverages at 3118 North Broadway, Chicago, Illinois. This was admitted in his answer, but he denied that he sold or gave alcoholic liquors to James Hopkins on the date in question. Plaintiff testified regarding James Hopkins' presence at a tavern called the Tennessee Corral on North Broadway, but there was no showing that the Tennessee Corral was located at the 3118 address or that James Hopkins or the plaintiff were at any time in a tavern at such address. On the record before us there was a complete failure to connect defendant Joe Leo with this cause of action, and the trial judge correctly directed a verdict in his favor.

The complaint, coupled with the answers of the remaining Dram Shop defendants, established that they were the operators of the taverns involved or that they had the requisite knowledge and were the owners of the premises on which such taverns were operated.

■ In order for the plaintiff to establish a prima facie case against these defendants, she was only required to show that intoxicating liquor was served at the respective taverns to the person injuring the plaintiff; that such person became intoxicated; that the liquor so served contributed to his intoxication and that the plaintiff's injury resulted from the intoxication. Taken in the light most favorable to the

plaintiff, the evidence presented at the trial established such a prima facie case.

Defendants argue that the evidence establishes that the plaintiff was, as a matter of law, guilty of complicity in that she participated in the bringing about of the intoxication of James Hopkins, and that, under the ruling case law, she cannot recover. In support of this contention they cite Meier v. Pocius, 17 Ill App2d 332, 150 NE2d 215; Phenicie v. Service Liquor Store, Inc., 23 Ill App2d 492, 163 NE2d 220; James v. Wicker, 309 Ill App 397, 33 NE2d 169, and Guardado v. Navarro, 47 Ill App2d 92, 197 NE2d 469.

We now proceed to distinguish the foregoing cases from the instant case.

In the first two cited cases the court upheld summary judgments in favor of the defendants. In both of these cases, the trial court had properly relied on depositions taken from the plaintiff which were attached to the affidavits filed in support of defendants' motion for summary relief. In Meier v. Pocius, 17 Ill App2d 332, 150 NE2d 215, the plaintiff had testified at the deposition that he accompanied his brother to at least two different taverns where they had drinks together, and that he and his brother each bought a few rounds. He also testified that his brother was sober just prior to the accident. In the counteraffidavit filed in opposition to the defendant's motion for summary judgment, the plaintiff did not deny his participation in the drinking, nor did he deny that his brother was sober. He merely stated that he did not have enough money with him at the time to buy drinks. The testimony clearly established that he had been drinking with the person who caused his injury. Such element is not present in the case at bar. His testimony also negated the intoxication of the person injuring him, a necessary element in his cause of action. Under these facts, the court was clearly correct in upholding the summary judgment.

210

In Phenicie v. Service Liquor Store, Inc., 23 Ill App2d 492, 163 NE2d 220 (also cited above), plaintiff had testified at the deposition that the person injuring him arrived in an intoxicated state at a National Guard meeting attended by the plaintiff. That the two of them went to the plaintiff's home after the meeting and drank a quart of beer. That after drinking the beer, and despite his prior knowledge of his companion's intoxication, plaintiff willingly got into a car with him and allowed his companion to drive. Here again the testimony established that the plaintiff had been drinking with the intoxicated person, and an additional element is present in that he willingly exposed himself to the risk of riding in a car driven by the intoxicated person. In the case at bar the jury could have believed from the evidence that the plaintiff accompanied James Hopkins to get something to eat at a time when he was perfectly sober; that instead of taking her to a restaurant as promised he took her to a tavern located some distance from her home in an area unfamiliar to her. Could it be said under these circumstances that by letting him drive her home she willing exposed herself to the risk of riding with an intoxicated person? The jury could reasonably conclude that she had no choice. The alternative open to this twenty-year-old single girl was to remain at a strange tavern in an unfamiliar neighborhood at 6:30 in the morning. This can hardly be termed an alternative. Although plaintiff testified that she suspected that James Hopkins was becoming inebriated while they were at the Pink Pony, she also testified that he seemed to be driving all right when they left to return to the city. She just chose what was apparently the lesser of two evils.

This court affirmed the trial court's entry of judgment for the defendants notwithstanding the verdict in the case of James v. Wicker, 309 Ill App 397, 33 NE2d 169 (cited above by defendants). The testi-

mony in that case established that the plaintiffs had been drinking and dancing with the intoxicated person from 10:00 p. m. until 2:30 a. m. the following morning. Again the element of drinking with the intoxicated person was present.

In Guardado v. Navarro, 47 Ill App2d 92, 197 NE 2d 469 (also cited above by defendants), the evidence showed that the plaintiffs and the intoxicated person were at different parts of the tavern while the drinking was going on. It was established that they had willingly accompanied him to the tavern; that they knew he had consumed between fifteen and twenty drinks and was inebriated; and that they, nonetheless, allowed him to drive the car when they left the tavern although, as the court said at page 99, "The male plaintiff, of a larger build than the driver, could have prevented this danger easily by turning off the key situated on the right side of the wheel." In the instant case the jury could have concluded that it would have been a useless gesture for the plaintiff, a young lady, to attempt to stop the intoxicated person, an adult male, from driving the automobile. The court in the Guardado case properly reversed the judgment entered on the jury verdicts in favor of the plaintiffs and remanded the cause for a new trial. In addition to the evidence of complicity, the trial court had erred in failing to properly instruct the jury, and at the trial the matter of insurance coverage had been repeatedly injected into the case.

Ness v. Bilbob Inn, Inc., 15 Ill App2d 340, 146 NE2d 234, was an action brought under the Dram Shop Act for injuries received when the car in which the plaintiff was riding collided with a cement abutment. Plaintiff, a staff sergeant in the army, testified to the following at a pretrial deposition. He and Allen W. Roberts, another sergeant, left the post on the day in question in the company of a private by the name of Hall. The two sergeants had tickets for a base-

ball game which they planned to attend in the afternoon. They were going to drive Private Hall out to the airport first so that he could catch a plane to take him to his new duty station. The three of them went first to the Bilbob Inn where they all had something to drink and they then proceeded to visit four other bars. The plaintiff had something to drink at all of these places. At the last tavern, Private Hall left the two sergeants as the tavern was located near Midway Airport. On the way back from the tavern the car in which the plaintiff was riding, which was being driven by Sergeant Roberts, collided with the abutment. During the course of the drinking, plaintiff had not bought any of the drinks as "he was broke." Defendants made a motion for a summary judgment relying on the above testimony appearing in the transcript of the pretrial deposition which was attached to their affidavits in support of the motion. Plaintiff filed a counteraffidavit in which he stated that if he had been asked certain questions at the deposition, he would have testified that at various times during the day he suggested to Sergeant Roberts that he either cease his drinking or modify it, but that he had been told to mind his own business. That he repeatedly requested that they proceed with their original plans and attend the ball game, and that he had no funds for transportation back to the base. Summary judgment was entered in favor of the defendants and this court reversed, holding that there was a question of fact as to the complicity of the plaintiff. The court at page 348 said:

"It is conceivable in the instant case, however, that if the jury heard the testimony in regard to the plaintiff's alleged intercession with the driver of the car to stop drinking and his insistence that they should go about the business of delivering the passenger to the airport and seeing the

213

ball game, and that the plaintiff had not furnished or bought the driver a single drink, the jury might find from these circumstances that the plaintiff had not procured the intoxication of the driver of the car and was such an innocent person as could recover."

Admittedly there is nothing in evidence in the instant case showing a protest by the plaintiff regarding James Hopkins' drinking, but the jury could have believed that she never intended to accompany him on a round of taverns and that her only purpose in going with him was to get something to eat.

█ Under the evidence in the case at bar, complicity was not established as a matter of law, and whether the plaintiff participated in the intoxication was a question of fact for the jury. (Ness v. Bilbob Inn, Inc., 15 Ill App2d 340, 146 NE2d 234; Busser v. Noble, 22 Ill App2d 433, 161 NE2d 150.)

█ Defendants argue that the plaintiff's testimony was completely impeached and was entitled to no weight. Since it was not corroborated, they argue that there was nothing for the jury to consider, and the trial judge correctly directed a verdict in their favor. The alleged impeachment occurred during the cross-examination of the plaintiff. The plaintiff testified that Mr. Hopkins was sober when they left the Tennessee Corral and was still sober when they subsequently left Tex Carter's. Defense counsel then asked the witness whether the following question concerning Mr. Hopkins' condition upon leaving the Tennessee Corral had been put to her and the following answer made by her at a previous deposition hearing:

Q. Do you have an opinion as to his condition of sobriety?

A. Well, he was drunk and still sort of knew what he was doing. I don't know. He was

sort of that in-between stage. I can't describe it.

Plaintiff responded, "If I did I was mistaken. I don't recall that." Defense counsel also asked if at the same deposition the witness had been asked if Mr. Hopkins was drunk when they left Tex Carter's and if the witness had answered, "Yes." Plaintiff responded, "If it's there I did." The jury could not have concluded that the above cross-examination, standing alone, impeached the plaintiff. Without referring to the transcript of the alleged deposition, the above response of the plaintiff on cross-examination did not establish that such questions had ever been posed to the plaintiff or so answered by her. The deposition was never offered in evidence by the defense, nor could it have properly been so offered during the presentation of plaintiff's case.

In this respect, the trial judge is in no better position than the jury. He could, on defendants' motion for a directed verdict, consider only the evidence presented. Since there was no proof of the contents of the alleged prior deposition, the trial judge should not have considered questions and answers supposedly appearing therein.

The judgment in favor of defendant, Joe Leo, is affirmed, and the judgment in favor of the remaining defendants is reversed and the cause, insofar as it relates to them, is remanded with directions to allow the motion for new trial and for such other and further proceedings as are not inconsistent with the views herein expressed.

Affirmed in part, reversed in part and remanded with directions.

SCHWARTZ, P. J. and DEMPSEY, J., concur.