NATIVIDAD RIGOR *et al.*, Individually and as Mother and Next Friend of THERESA RIGOR *et al.*, Plaintiffs-Appellants, *v.* HOWARD LIQUORS, INC., *et al.*, Defendants-Appellees.

(No. 56380;

First District (2nd Division)—April 3, 1973.

Eugene F. Welter, of Chicago, for appellants.

Lord, Bissell & Brook, of Chicago, (Robert B. Austin, Hugh C. Griffin, and Richard E. Mueller, of counsel,) for appellees.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs, the wife and children of Peter Rigor, sued defendants Howard Liquors, Inc. (hereinafter referred to as Howard's) and Rose Kelley, d/b/a Kelley's (hereinafter referred to as Kelley's), in a dram-shop action. Plaintiffs sought recovery for loss of support against Kelley's for the intoxication of John Mika who was the driver of an automobile involved in an accident. Plaintiffs also sought relief against Kelley's and Howard's for the intoxication of Peter Rigor, claiming that Rigor's intoxication caused him to become a passenger in the car driven by Mika. The jury returned a verdict of not guilty as to both defendants, and the court denied plaintiffs' post-trial motion. On appeal plaintiffs present these issues for our review:

1. Whether the trial court erred in failing to require defendants to complete the impeachment of *plaintiffs'* witness; and
2. Whether the trial court erred in admitting the testimony of a police officer who testified from his accident report.

The testimony of Peter Rigor and Police Officer Peter McElligott is pertinent to this appeal. Peter Rigor testified that on November 2, 1965, he was drinking at Howard's from 6 P.M. to approximately 8 P.M. After 2 or 3 beers he left Howard's and went to the race track where he remained for 2 races. He returned to Howard's at approximately 10:30, and drank 4 or 5 more beers. When Howard's closed, he went to a coffee shop, and at approximately 2:15 or 2:30 A.M., he went to Kelley's and had 3 or 4 more beers. Rigor testified that he saw Mika fifteen minutes after he entered, and Mika had 3 or 4 drinks. Mika and Rigor left Kelley's around 4 A.M. and Mika drove to Lindsey's tavern where Rigor had 3 or 4 more beers and Mika had 3 or 4 screwdrivers. Rigor stated at trial that Mika seemed groggy and sluggish after leaving Lindsey's at approximately 6:30 A.M. While driving Rigor back to his parked car near

Howard's, Mika swerved his car to the right while trying to pass other cars, and struck a parked car from the rear.

During cross-examination of Rigor, defendants' counsel attempted to lay a foundation for impeachment by reading questions and answers from a deposition taken of Rigor on June 20, 1966. Rigor admitted coming in for the deposition, but his signature was not on the transcript. Plaintiffs' counsel asked defense counsel to identify the transcript; thereafter plaintiffs only objected to the form of materiality of the questions. The answers to the deposition read at trial showed that Rigor had previously said that he stayed at the race track for 7 or 8 races; that he had 3 more beers at Howard's after the track; that he went to Kelley's at 2:45 or 3:00 A.M. and had one beer there; that he did not know if Mika drank in Kelley's because he did not see him until nearly closing time; that upon leaving Lindsey's Mika looked "all right" to him; and that he did not know why Mika swerved the car before the collision.

After Rigor's testimony, defendants advised the court that they were unable to call the court reporter who had attended the deposition, but could produce another reporter to verify the accuracy of the deposition transcript. The trial court, however, ruled that defendants were not required to make an offer of proof because of plaintiffs' failure to object to the use or authenticity of the deposition.

Defendants called Officer McElligott who investigated the accident. He testified to details of the accident and the condition of the driver. McElligott stated that he arrived at the scene at 7:15 A.M., and that he signed the accident report. He then read the report to refresh his memory. He was asked how he checked the box in his report marked "Physical Condition," and he answered "normal." He also stated that he made no notation in his report concerning liquor. Plaintiffs' attorney objected continuously that the witness was reading from his report and that he had no independent recollection. The court repeatedly stated that the officer could testify from his report since he had made it. On cross-examination the officer testified that he had no independent recollection of the accident, and could not testify as to details not mentioned in his report; that all he could remember was arriving at the scene at 7:15. He then stated that he had an independent recollection of the "accident I handled, that I had taken the gentleman to the hospital." Plaintiffs' counsel asked questions concerning the weather and traffic conditions at the time of the accident and the officer referred to his report. Finally, the witness again testified that his present recollection was limited to the contents of the report and his arrival at the accident scene at 7:15. On redirect examination the officer acknowledged that he made the report at 8:30 A.M. of the day of the occurrence, while he had a

present recollection of the facts. The court denied plaintiffs' motion to strike this testimony by again stating that the testimony from the report was admissible because it was the witness's report, he signed it, and at the time he signed it, it was an accurate recollection of what he had observed.

## OPINION

Plaintiffs first contend that it was prejudicial error to allow defendants to lay a foundation to impeach a witness on a material matter, and then fail to offer proof of the allegedly impeaching statement. Defendants contend that no further proof of the deposition was required because plaintiffs never objected to the accuracy of the transcript, and never made a motion to suppress the deposition. In the alternative, defendants argue, that even if plaintiffs did not waive proof, Rigor admitted the most damaging deposition answers, and therefore, defendants were not required to offer proof of the impeaching statements.

■■ Initially, we hold that Supreme Court Rule 211,[1] regarding waiver of errors and irregularities in depositions, is inapplicable in this case. We know of no situation where a party has the burden of raising an objection to the deposition in order to require the impeaching party to complete his impeachment by offering proof of the deposition. In *Cibis v. Hunt*, 48 Ill.App.2d 487, 199 N.E.2d 246, an unsigned deposition was used to support a motion for summary judgment, not for impeachment, and the objection to the use of the deposition concerned non-compliance with Rule 211 requiring a recital by the certifying officer that the party waived signature.

■■ Supreme Court Rule 212[2] provides that discovery depositions may be used to impeach the testimony of the deponent as a witness "in the same manner and to the same extent as any inconsistent statement made by a witness." The rule in Illinois regarding impeachment by a prior inconsistent statement is that, once counsel has laid a foundation for impeachment, he is under an obligation in law to offer proof of the allegedly impeaching statement. (*Schoolfield v. Witkowski*, 54 Ill.App.2d 111, 203 N.E.2d 460; *Danzico v. Kelly*, 112 Ill.App.2d 14, 250 N.E.2d 801.) The only exception to this rule occurs when the witness admits that he made the prior statement.. *Logue v. Williams*, 111 Ill.App.2d 327, 250 N.E.2d 159.

■■ In the instant case, defendants argue that they were ready and willing to tender proof of the deposition transcript, and that the trial

---

[1] Ill. Rev. Stat. 1971, ch. 110A, par. 211(d).

[2] Ill. Rev. Stat. 1971, ch. 110A, par. 212(a)(1).

judge stated that he would not require further proof. In addition, they maintain that the trial court's refusal to require completion of the impeachment was beneficial to plaintiffs and was prejudicial to defendants. However, it is clear that innuendoes involved in allegedly impeaching questions on a material issue are highly prejudicial. *Miller v. Chicago Transit Authority,* 3 Ill.App.2d 223, 121 N.E.2d 348; *Ramseyer v. Illinois Central Railroad Co.,* 110 Ill.App.2d 95, 249 N.E.2d 120.

■■■ The issues of Mika's intoxication and Rigor's intoxication were certainly important and material issues. Therefore, the basic question before us is whether Rigor's answers at trial admitted the prior inconsistent statements. The following answers were given by Rigor when he was asked if he recalled giving certain deposition answers:

> (Number of races at track) "I thought I was there for just 2, for the double, that's all."

> (When he returned to Howard's) "I don't deny it. I might have made a mistake."

> (How many beers in Howard's after track) "I could have said 3 or 4 or 5, I don't know. Around in that."

> (Time of arrival at Kelley's) "Around in that time. Closer to 2:30."

> (Number of beers at Kelley's) "I don't recall that direct, if I said it. But I know I had 3 beers, 3 beers positive."

> (Condition of Mika) "If I said it, it must be there."

> (Reason Mika swerved) "If that's what it was then, I would have answered it that way."

Rigor's answers neither admitted nor denied the statements, his answers were equivocal. We do not believe that such answers are admissions of the inconsistent statements. Rigor's answers put the authenticity of the deposition in issue, and should have required a prove-up.

In *People v. Williams,* 105 Ill.App.2d 25, 245 N.E.2d 17, the defendant was asked questions regarding his testimony at a coroner's inquest. Defendant answered that he did not remember, and the prosecution did not prove the alleged impeaching statements. The court held that once the foundation was laid, counsel must offer proof. In *Dunkelberger v. Hopkins,* 51 Ill.App.2d 205, 200 N.E.2d 905, defendant's counsel asked plaintiff if she recalled making prior inconsistent statements at a deposition. Plaintiff answered that if she made that statement she was mistaken and did not recall it; if it was there, then she said it. Defendant never offered the deposition into evidence, and the court held that the cross-examination, standing alone, did not impeach the witness. Without referring to the transcript of the alleged deposition, plaintiff's responses

did not establish that such questions had ever been posed to plaintiff or answered.

■■ In the case at bar, as in *Dunkelberger,* Rigor's responses did not establish the authenticity of the transcript, and therefore, defendants should have been required to offer proof of the deposition. Absent such proof, we cannot conclude that Rigor's testimony was properly impeached.

There are cases in Illinois which hold that where the witness's answers at trial are equivocal, it is counsel's option to offer the impeaching statement if he so desires. (*People v. Preston,* 341 Ill. 407, 173 N.E. 383; *Vancil v. Fletcher,* 90 Ill.App.2d 277, 232 N.E.2d 789.) However, these cases are distinguishable in that they involved situations where the witnesses' answers at trial were unresponsive, and the prior inconsistent statements *were* introduced. On appeal the issue was whether the impeaching party could complete the impeachment.

Plaintiffs' second contention is that Officer McElligott's testimony from his police report was improperly admitted into evidence. Defendants contend that the police report merely refreshed the officer's recollection, and therefore, his testimony was proper.

■■ Supreme Court Rule 236(b)[3] prohibits the introduction into evidence of police reports. However, a police report can be used to refresh the memory of a witness. *Hall v. Checker Taxi Co.,* 109 Ill.App.2d 445, 248 N.E.2d 721.

■■ In the present case, our review of the record indicates that the report was not used merely to refresh the witness's memory, but was read into evidence. On direct examination the officer testified by referring to his report. On cross-examination the witness admitted that he could testify only as to facts in his report. The officer did make the ambiguous statement that he had an independent recollection of the "auto accident I handled * * *." However, he then went on to testify that his recollection of the occurrence was limited to what he had said in his report, except for the fact that he recalled going to the accident scene at approximately 7:15 A.M. We are convinced that the witness's testimony on cross-examination clearly showed that he had no recollection of the accident even after reviewing the police report.

■■ In addition, we do not believe that the report could be read into evidence as past recollection recorded. The primary prerequisites for past recollection recorded, that the witness have no independent recollection and that the document fail to refresh the witness's memory (*Noumoff v. Rotkvich,* 88 Ill.App.2d 116, 232 N.E.2d 107), are satisfied in this case. However, a foundation for past recollection recorded must

---

[3] Ill. Rev. Stat. 1971, ch. 110A, par. 236(b).

also be laid by having the witness testify that he has no independent recollection, that he recorded the facts at the time of the occurrence or soon afterward and that his report was accurate and true when made. (*Diamond Glue Co. v. Wietzychowski,* 227 Ill. 338, 81 N.E. 392; *Koch v. Pearson,* 219 Ill.App. 468.) Here the officer testified on redirect examination that he made the report, signed it and had a fresh recollection of the facts when he made it. This was an attempt to belatedly lay the foundation for admission of the contents of the police report. However, the officer did not testify that he knew his report to be accurate when made. Therefore, his testimony did not substantially comply with the requirements for past recollection recorded. In view of this finding and our finding that the report did not refresh the witness's recollection, it was error to allow this witness to testify to the contents of the police report.

In light of these errors, the judgment of the trial court is reversed and the cause is remanded for a new trial.

Reversed and remanded for a new trial.

LEIGHTON and HAYES, JJ., concur.