THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CLEOTHA COX, Defendant-Appellant.

*First District (1st Division)*    No. 80-1276

Opinion filed September 14, 1981.

James J. Doherty, Public Defender, of Chicago (Mary Ann Wilson and Suzanne M. Xinos, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Joel A. Stein, and Constantine. N. Bastounes, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

After a jury trial, defendant Cleotha Cox was found guilty of aggravated battery and armed violence based on the underlying felony of aggravated battery (great bodily harm) and sentenced to concurrent sentences of 7 years for the armed violence conviction and 5 years for the aggravated battery conviction. On appeal, defendant contends that the trial court erred (1) in refusing to allow the defense to perfect impeachment by omission of Barbara Haynes; (2) in denying the defense the introduction of a certified copy of a misdemeanor theft conviction for the purpose of impeaching Barbara Haynes; and (3) in refusing jury instructions tendered by the defense dealing with the theories of self-defense and accident.

Barbara Haynes testified that in the late evening hours of August 23, 1978, she was visiting her mother, Emma Haynes, at 3900 West Roosevelt Road in Chicago, Illinois. At that time, Barbara Haynes saw and spoke to defendant Cleotha Cox outside a pool room located at 3902 West Roosevelt Road. Barbara Haynes had known defendant for 3 or 4 years and had lived with him for 3 years at 4425 North Clifton Street. After their relationship ended in May 1978, defendant moved to 920 South Independence Avenue, where he was living on August 23, 1978.

Upon seeing defendant, Barbara Haynes told him she wanted to be left alone. Defendant told her that she was no good and began to talk about her. Barbara Haynes then "patted her behind" to him. Defendant grabbed her and told her "not to be telling him to kiss my behind." Defendant then pushed her up against some burglar bars and they began to strike each other. During the struggle, Barbara Haynes bit defendant's left hand. Barbara Haynes was knocked down in a vacant lot nearby. While she was lying on the ground in the lot, defendant took a tire iron from his car.

Emma Haynes had witnessed the argument between defendant and her daughter and called the police. The police arrived and told everyone to go home.

At approximately 2 p.m. the next afternoon, Barbara Haynes testified that she and her current boyfriend, Charles Burns, went into the pool

room located at 3902 West Roosevelt Road. She and Burns played a game of pool. Defendant then entered the pool room and in a loud voice asked Burns if Barbara Haynes was his lady. Barbara Haynes testified that defendant then brushed up against Burns on his way to the washroom. Barbara Haynes went upstairs to tell her mother of defendant's presence. When she came back to the pool room, defendant and Burns were having an argument. The owner of the pool room, Pierce Johnson, told defendant and Burns to take their argument outside. Burns, Barbara Haynes and defendant then left the pool room.

Barbara Haynes and Burns walked to the corner of Roosevelt Road and Springfield Street, where they saw defendant standing on Springfield Street. Barbara Haynes testified that defendant approached Burns and touched him on the shoulder. The two men began arguing and started to struggle. Defendant then pulled out a pistol from his right pocket. Burns raised his left hand to block the shot. The gun discharged, and Burns was shot in the wrist. After this shot was fired, defendant grabbed Burns around the neck with his left hand. While holding Burns in a headlock, defendant had the gun in his right hand and pointed towards Burns' face and throat. While Burns' hands were at his side, two more shots were fired, striking Burns in the neck. After these shots were fired, Burns was released and fell to the ground. Barbara Haynes further testified that defendant then knelt on one leg and pointed the gun at Burns' head. At this point Barbara Haynes shouted, "Don't shoot him anymore." Defendant then ran across a vacant lot to his car. Defendant was subsequently arrested near the corner of Springfield and Fillmore Streets.

Defense counsel attempted to introduce Barbara Haynes' 1974 conviction for misdemeanor theft. The trial court ruled the evidence inadmissible.

During cross-examination, defense counsel attempted to impeach Barbara Haynes' testimony by asking her if she had told the police about the facts she had just testified to on direct examination. A side bar was had to determine the scope of the foundational questions defense counsel would be permitted to ask in his attempt to impeach the witness. The court stated that while the area defense counsel was attempting to inquire into was somewhat remote to the legal issues before the court, the inquiry would be helpful in determining defendant's state of mind and therefore allowed defense counsel latitude in his attempt to impeach Barbara Haynes.

Defense counsel then asked Barbara Haynes if she told Officer Franklin about defendant brushing up against the victim in the pool room and about defendant touching the victim's shoulder on the street. Barbara Haynes was asked if she told Officer Franklin that defendant knelt down and pointed the gun at Burns' head after defendant had shot Burns. She

was also asked whether she told Officer Franklin that defendant held the victim in a headlock. She replied that she did not recall what she told Officer Franklin except for the fact she did tell him about the headlock.

Defense counsel then asked her if she mentioned these facts to any other police officers. She replied that she did not recall whether she told the police about the brushing or touching incidents, but she did recall that she mentioned the headlock incident to Officer Franklin and the kneeling down incident to someone at the police station. Subsequently, the State called Officer Franklin to testify. Defense counsel declined to question him when given the opportunity for cross-examination.

Prior to the defense beginning its case-in-chief, the State made a motion *in limine* to prevent the defense from calling Officer McElrath for the purpose of perfecting an impeachment of Barbara Haynes' testimony. The State argued that the foundational questions asked of her referred specifically to Officer Franklin. The State also argued that unless defense counsel called all the officers she spoke to it would raise an unfair inference that if she did not say something to McElrath she did not say it at all.

After argument, the court allowed McElrath's testimony to be heard first outside the presence of the jury. Officer McElrath testified that Barbara Haynes told him that defendant brushed up against the victim in the pool room and that the two men argued there. He further testified as follows:

"Q. During the course of your conversation with Barbara Haynes that day, Officer, did she at any time tell you that after the first shot was fired Mr. Cox got Mr. Burns in a headlock and that the other shots were fired after that?

A. No, sir, I don't recall her telling me that.

Q. Officer, did she at any time during the course of your conversation with her tell you that after the shots had been fired Mr. Cox knelt down on one knee and pointed the gun at Mr. Burns and that she begged Mr. Cox not to shoot him anymore?

A. No, sir, I don't recall her telling me that either."

McElrath was not questioned as to the touching incident. On cross-examination, the officer testified that his report, which did not include these matters, was just a summary and not based on a detailed question and answer session. He further testified that Barbara Haynes spoke about the incident with other officers that day and also that it was possible that she told him about the headlock and defendant getting down on one knee but that he just did not recall.

After *voir dire* examination of McElrath, the court stated that McElrath's testimony as to the brushing and arguing incidents was not impeaching because he testified that she did in fact tell him about these

incidents. The court also stated that the question of whether she told anyone about the headlock was not asked of her on cross-examination, hence it could not be asked of McElrath in the jury's presence. The record shows that defense counsel did ask her if she told Officer Franklin or any other police officer about the headlock, but she was never asked if she told Officer McElrath about it.

On direct examination in the presence of the jury, the court allowed defense counsel to question Officer McElrath only as to whether Barbara Haynes told him about defendant kneeling down and pointing the gun. McElrath again testified that he did not recall what she told him and he also stated that his police report did not indicate whether Barbara Haynes saw defendant kneel down.

Chicago Police Officer John Rawski testified that pursuant to a radio broadcast he apprehended defendant's vehicle as it was traveling northbound on Springfield Street at a high rate of speed. Upon stopping the vehicle, the officer saw defendant's bloodstained pants leg and waistband. Defendant was searched and a gun was recovered, along with three expended shells and two live rounds.

After the shooting, the police arrived at the scene. Chicago Police Officer Everett Franklin testified that he responded to a flash message at 2:15 p.m. on August 24, 1978, pertaining to an injured man in the vicinity of 3900 West Roosevelt Road. Upon reaching the scene, he observed Burns, bleeding from the mouth and leaning on Barbara Haynes. Franklin attempted to speak with Burns; however, Burns was incoherent due to the nature of his wounds. After speaking with Barbara Haynes, a radio message was dispatched to locate defendant. No questions were asked of Franklin on cross-examination.

Burns testified that he knew about the previous argument between defendant and Barbara Haynes. When Burns saw defendant in the pool room, they got into an argument. Burns testified that after a verbal exchange defendant brushed up against him. Defendant, Barbara Haynes and Burns then left the pool room and Burns and defendant "got to tussling." Burns stated that defendant pulled out a gun and Burns threw his left hand up, trying to grab the weapon. Defendant grabbed Burns behind the neck and shot him through the throat, the gun discharging three times. Burns fell to the ground and heard Barbara Haynes tell defendant not to shoot anymore.

Emma Haynes testified that she saw defendant and Barbara Haynes having a physical altercation in the early morning hours of August 24, 1978, and called police. Later that day, at 2 p.m., she was at home when Barbara Haynes came to her apartment. A short time later, Emma Haynes went downstairs. After an argument between the two men, defendant

reached into his pocket, pulled the gun and, when Burns tried to grab it, the gun discharged and defendant grabbed Burns around the neck with his left arm, shooting him. She observed Burns fall to the ground and defendant kneel down and put the gun to Burns' head.

Defendant testified that when he approached Barbara Haynes at 3900 West Roosevelt Road on August 23, 1978, she "patted her behind" to him. After he asked her why she was doing that, she began to scream and cuss. He stated that Barbara Haynes grabbed his collar and tore his shirt off. Defendant pushed her down and Barbara Haynes bit his left thumb. While Barbara Haynes was on the ground, he began to strike her. However, his right hand hit the concrete instead, whereupon Barbara Haynes released him. The next day his right hand was swollen and he "couldn't bear to touch anything hardly with it."

Defendant further testified that on the afternoon of August 24, 1978, he left his home to go to see a doctor at a clinic. He stopped off to see his friend Pierce Johnson, owner of a pool room at 3902 West Roosevelt Road. He saw Barbara Haynes and Burns in the pool room, standing at the end of the pool table. He observed Burns pick up a billiard ball and walk towards defendant while looking at defendant and Johnson. Burns eventually put the ball down and left with Barbara Haynes. Defendant stated that he stayed in the pool room for another 3 to 4 minutes, talking to Johnson, who told him not to get into any trouble.

Defendant testified that after leaving the pool room he saw Burns, Barbara Haynes and Emma Haynes about 40 feet off the corner of Springfield Street. Defendant walked up to Burns and asked him if Barbara Haynes was his girlfriend. Burns replied that she was. Defendant then said that he would like Barbara Haynes "to stay out of his face or start messing." Burns stated that Barbara Haynes could do anything she wanted to do. Defendant said that he wished to be left alone. Defendant testified that at this point Burns said, "Look, we can get it on now" and started moving around as if he wanted to box. Defendant told Burns that he did not have anything against him and that there was no reason for them to be fighting. Defendant then pulled a gun out of his pocket. He waved the gun across his body with his finger on the trigger hoping Burns would walk away.

Defendant testified that something drew his attention away from Burns and, while he looked off, the victim grabbed for the gun in defendant's right hand and the gun went off. The two men scuffled and the gun was about waist high when it went off again. Burns had both hands on defendant's right hand each of the three times the gun discharged. When Burns began "loosening up" after being shot, defendant grabbed the back of Burns' neck and pulled it back because it had rolled

over. He then released Burns, put the gun in his back pocket and fled the scene. Throughout the scuffle, defendant held the gun with his finger on the trigger.

Pierce Johnson testified that after defendant's arrival in the pool room, Burns and Barbara Haynes entered and began to shoot a game of pool. During the game, someone shouted "What are you looking at?" and defendant replied, "You all." Johnson testified that Barbara Haynes left the pool room and Burns picked up a billiard ball and a cue stick and started toward the door with them. Johnson then told Burns and Barbara Haynes to leave and they did so.

Defendant first contends that the trial court erred in refusing to allow the defense to perfect impeachment of Barbara Haynes by omission when it (1) limited Officer McElrath's testimony concerning the omitted statements of Barbara Haynes and (2) instructed the jury to disregard certain cross-examination questions asked of Barbara Haynes.

■■ We find that the trial court did not err in refusing to allow the defense to perfect the impeachment of Barbara Haynes through the testimony of Officer McElrath because a proper foundation had not been laid for such impeachment.

The latitude to be afforded in cross-examination of witnesses rests largely in the trial court's discretion and, absent a showing of abuse of that discretion, its determination will not be disturbed on appeal. (*People v. Brown* (1980), 91 Ill. App. 3d 582, 414 N.E.2d 1165.) "Before a witness may be impeached by a prior inconsistent statement, it is required that a proper foundation have been established by directing the attention of the witness to the time, place and circumstances of the statement, as well as to the substance of the statement in order to avoid unfair surprise and to give the witness an opportunity to explain." (*People v. Smith* (1980), 78 Ill. 2d 298, 304-05, 399 N.E.2d 1289.) However, in *People v. Henry* (1970), 47 Ill. 2d 312, 265 N.E.2d 876, the formal foundation requirements were relaxed because those requirements were substantially satisfied. In *Henry*, the witness was asked whether she had had a prior conversation with the impeacher specifically regarding the statement she had given to the police during their investigation of the subject crime. There, the witness was alerted to the substance of the remark and to the identity of the person to whom it was allegedly made and therefore the purposes of the foundation requirements were satisfied.

However, in the instant case Barbara Haynes was only asked if she had mentioned certain facts regarding the incident to Officer Franklin. Because she was not asked about any conversation she had with Officer McElrath, there was no foundation laid for impeachment of Barbara Haynes through the testimony of Officer McElrath. (*People v. Ellis* (1976), 41 Ill. App. 3d 377, 354 N.E.2d 369.) Furthermore, despite the lack

of foundation for Officer McElrath's testimony, the trial court did allow the officer to be questioned concerning defendant kneeling and pointing the gun at Burns' head.

We find that the trial court gave defense counsel wide latitude in his attempt to impeach Barbara Haynes and that the court did not err in refusing to allow defense counsel to perfect the impeachment of Barbara Haynes through Officer McElrath.

Defendant also argues that the trial court erred by instructing the jury to disregard certain cross-examination questions asked of Barbara Haynes. Specifically, defendant claims that the jury was erroneously instructed to disregard questions asked of her regarding whether she had told Officer Franklin that defendant brushed up against Burns and whether defendant touched Burns on the shoulder just before the shooting. We disagree.

During cross-examination of Barbara Haynes, she stated that she did not recall whether or not she told Officer Franklin that defendant brushed up against Burns and whether defendant touched Burns on the shoulder just before the shooting.

■■ If the witness states that he cannot remember making the statement, the prior statement must be proved. (*L. D. Brinkman & Co.-Midwest v. National Sponge Cushion Co.* (1979), 76 Ill. App. 3d 683, 394 N.E.2d 1221; *Rigor v. Howard Liquors, Inc.* (1973), 10 Ill. App. 3d 1004, 295 N.E.2d 491; *People v. Williams* (1969), 105 Ill. App. 2d 25, 245 N.E.2d 17; *Dunkelberger v. Hopkins* (1964), 51 Ill. App. 2d 205, 200 N.E.2d 905; Cleary and Graham, Handbook of Illinois Evidence §613.3 (3d ed. 1979).) Here, defense counsel did not ask Officer Franklin any questions on cross-examination and did not call Franklin in order to prove up Barbara Haynes' alleged omissions. Because defense counsel did not introduce evidence to prove up her alleged omissions, the trial court properly struck the cross-examination regarding the issue and instructed the jury to disregard it. See *Danzico v. Kelly* (1969), 112 Ill. App. 2d 14, 250 N.E.2d 801.

Defendant's second contention is that the trial court erred in refusing to allow his impeachment of Barbara Haynes with her prior conviction for misdemeanor theft; she had been convicted in 1974. The trial here took place in April 1980.

*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, sets forth the fundamental rule of impeachment of a witness by a prior conviction. It requires that the conviction be for an offense punishable by imprisonment in excess of one year, or, alternatively, that the offense involve dishonesty or false statement regardless of the punishment. A prior misdemeanor theft conviction is admissible for purposes of impeachment. (*People v. Spates* (1979), 77 Ill. 2d 193, 395 N.E.2d 563; *People v. Jackson* (1979), 79 Ill. App. 3d 698, 398 N.E.2d 959.) However, it is the

province of the trial court to weigh the probative value of a conviction for misdemeanor theft against the potential for unfair prejudice which might result and, in the appropriate case, refuse to admit evidence of a conviction. (*People v. Spates.*) The various factors to be considered are: the nature of the crime, the nearness or remoteness in time of the conviction to the present trial, the subsequent career of the person, and whether the crime was similar to the one charged. (*People v. Montgomery.*) The balancing of considerations must necessarily differ when the witness to be impeached in a criminal trial is not the defendant. *People v. Thomas* (1978), 58 Ill. App. 3d 402, 374 N.E.2d 743; *People v. Jacobs* (1977), 51 Ill. App. 3d 455, 366 N.E.2d 1064.

■■ Here, the trial court did not weigh the probative value of the evidence and the danger of unfair prejudice. The trial court did not exercise its discretion because it considered the misdemeanor theft conviction inadmissible for purposes of impeachment. The Illinois Supreme Court had not yet decided *Spates.* However, applying the discretionary test of *Montgomery* to the facts here, we find that the probative value of the conviction is not substantially outweighed by any prejudice to the witness. She is not on trial for any crime, and the jury would use her conviction only to question her credibility. On these facts, the decision by the trial court to exclude Barbara Haynes' prior misdemeanor theft conviction was an abuse of discretion.

■■ However, this is not a case where during the course of the trial the credibility of the witness sought to be impeached by a prior conviction is repeatedly pitted against that of the defendant. (See *People v. Thomas.*) Barbara Haynes was not the only eyewitness and her testimony and that of Burns and Emma Haynes did not differ substantially regarding the incident. Thus, although the exclusion of Barbara Haynes' prior conviction for misdemeanor theft was error, we find that error harmless beyond a reasonable doubt.

Defendant's final contention is that the trial court erred in (1) refusing defendant's tendered IPI instruction regarding the issue of self defense and (2) refusing two instructions tendered by defendant regarding the issue of accident.

Defendant tendered Illinois Pattern Jury Instruction, Criminal, No. 24.06 (1968), which states:

> "A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force.
>
> However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself."

Justifiable use of force is an affirmative defense (Ill. Rev. Stat. 1979, ch. 38, par. 7—14; *People v. Bratcher* (1976), 63 Ill. 2d 534, 349 N.E.2d 31) which requires that defendant must present some evidence thereon unless the State's evidence raises the issue. (Ill. Rev. Stat. 1979, ch. 38, par. 3—2; *People v. Bratcher*.) In addition, a defendant has the right to have the jury instructed on the law applicable to a particular set of facts even if there is only slight evidence relating to defendant's theory of the case. *People v. Kalpak* (1957), 10 Ill. 2d 411, 140 N.E.2d 726; *People v. Carmack* (1977), 50 Ill. App. 3d 983, 366 N.E.2d 103; *People v. Kucala* (1972), 7 Ill. App. 3d 1029, 288 N.E.2d 622.

■■ Because the affirmative defense was not raised by the State's evidence, defendant had to present some evidence to raise the issue of self defense. However, even if defendant's version of the incident is accepted, we find that no evidence of self defense was presented. Defendant stated that Burns began to move around as though he wanted to box; he also stated that Burns was unarmed and did not strike defendant. In addition, defendant testified that he pulled out his gun to scare Burns away. Defendant presented no evidence that during the scuffle he fired the gun because he believed that amount of force was necessary to prevent injury to himself. Because no evidence of self defense was presented at trial, the trial court properly refused to instruct the jury on the issue. *People v. Bratcher*.

■■ Defendant also tendered the following two instructions, both of which the trial court refused:

> "If from your consideration of all the evidence you find that on each occasion the gun discharged either by accident or as the result of acts performed by someone other than the defendant then you should find the defendant not guilty.
>
> If from your consideration of all the evidence you find that on each occasion the gun discharged either by accident or as the result of acts performed by someone other than the defendant, then you should find that the firing of the gun was not an act performed by the defendant, and that the results of the gun being fired were not knowingly and intentionally caused by the defendant."

An instruction on misadventure or accident simply tells the jury that the defendant must be found not guilty if the requisite mental state is lacking to establish the particular crime with which the defendant is charged. (*People v. Witherspoon* (1973), 55 Ill. 2d 18, 302 N.E.2d 3.) This is an inverted way of instructing the jury as to the elements of the crime and instructing the jury that the burden of proving beyond a reasonable doubt every material allegation of the offense rests upon the State. (*People v. Witherspoon*.) Because the jury in the instant case was properly instructed as to the State's burden in proving the elements and the requisite mental

states of the crimes charged before defendant could be found guilty, the instructions regarding accident or misadventure were not required. *People v. Witherspoon; People v. Nutall* (1980), 91 Ill. App. 3d 758, 415 N.E.2d 628; *People v. Kelly* (1975), 24 Ill. App. 3d 1018, 322 N.E.2d 527.

The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

GOLDBERG and McGLOON, JJ., concur.