People of the State of Illinois, Defendant in Error, v. Jeffery Junior Williams (Impleaded), Plaintiff in Error.

Gen. No. 53,058.

First District, Third Division.

January 9, 1969.

Sheffey, Jacobs & Stemm, of Chicago (Edwin J. Belz, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Howard Levine, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

The defendant appeals from a conviction of murder. The trial was by jury, and the court imposed a sentence of thirty to sixty years in the Illinois State Penitentiary. An appeal was initially taken to the Supreme Court which transferred the cause to this court because the defendant's appeal did not present a substantial constitutional question.

The defendant, Jeffery Junior Williams and one Leonard White were charged in a two-count indictment with the murder and voluntary manslaughter of one Will Hugh Hutto.

The defendant contends on appeal that (1) the denial of his petition for a change of venue was reversible error; (2) the denial of a sanity hearing violated due process of law; (3) the court erred in allowing the State to nolle the manslaughter count of the indictment after

28

the jury was impanelled and evidence was presented; (4) he was wrongfully denied the right to examine various police reports and other statements which the defense desired to use for impeachment; (5) prejudice resulted from the State's failure to offer proof of the defendant's alleged prior inconsistent statements; and (6) the court erred in initially permitting the admission of Leonard White's statement to the police.

The case came to trial on April 29, 1963, and after the prospective jurors had been sworn, Leonard White, the other defendant, entered a plea of guilty.

Leonard White testified on behalf of the State to the following: On the evening of March 14, 1962, at 11:00 or 12:00 p. m., he and the defendant left a tavern and walked to Chicago's South Water Market. The defendant was carrying a shotgun which White had picked up earlier in the evening. On the way toward the market, the defendant "broke the gun down and put something in it." When the two men reached the market, a truck driven by Will Hugh Hutto pulled up to the loading dock. As Hutto was standing on a loading dock, he was approached by the two men whereupon the defendant demanded money of the driver. The driver jumped from the dock and turned toward the men and pulled "something shiny" from his pocket, and as he did so, the shotgun held by the defendant discharged and the blast struck Hutto. The two men left and took the gun to one Johnny Mae Henderson's apartment.

White admitted that he and the defendant went to the South Water Market earlier in the evening at which time the defendant talked to a truck driver but White had no conversation with this driver and did not know what the defendant had said to him. After talking to this driver, the pair returned to the tavern.

The deceased's sister, Colleen Hutto Gochenour, was the State's "life and death witness" who testified that

she had seen her brother alive in February, 1961, and had identified him at the morgue on March 15, 1962.

William Lonnie Greene also testified for the State that on the evening of March 14, 1962, he was sitting in his cab waiting to unload when two men knocked on the cab and offered to unload his truck. When he told them that he didn't want to be unloaded, both men left. At a lineup and at trial, the witness identified defendant as one of the men who approached him.

The State offered the testimony of Detective John Loftus who stated that he had talked to Leonard White in custody, and, in the presence of the defendant. White related his version of the crime which was substantially similar to White's testimony on the witness stand. The police officer stated that the defendant took him and another officer to the South Water Market whereupon the defendant related the following: On the evening in question, the defendant and White did approach a driver and asked him if he wished to be unloaded. At this point, the man jumped from the dock, ran, and then turned around and had something shiny in his hand. The defendant testified that at this time, both he and White picked up the shotgun which had been leaning against a building and in so doing the gun was fired and the driver fell to the ground. The defendant denied that he had talked to the witness, William Lonnie Greene. Loftus stated that the defendant told him that he went to the market that night "to commit a robbery."

The defendant took the stand in his own behalf and testified in much the same way as he had related the occurrence to Officer Loftus. He did not know whether the gun was loaded and stated that it was White who carried the shotgun as they walked to the South Water Market. The defendant further testified that the gun was fired after the victim had pulled a knife and lunged toward him in an attempt to stab him. He denied talking to any truck driver on the evening in question.

30

Vincent Bentivenga, an Assistant State's Attorney, testified that on March 15, 1963, he had talked to the defendant while in custody, and the defendant initially denied any participation in the crime. Later the defendant stated to Mr. Bentivenga that a man had pulled a knife on him at the South Water Market and the gun "just went off."

■ ■ The defendant first argues that the denial of his petition for a change of venue was reversible error. The petition was presented after the defendant's motion to quash the indictment had been denied and after the jury had been impanelled. Once the court has ruled on a substantive issue such as ruling on a motion to quash, the petition for change of venue comes too late. (People v. Wilfong, 17 Ill2d 373, 162 NE2d 256; People v. Chambers, 9 Ill2d 83, 136 NE2d 812.) The case cited by the defendant, People v. McGlothen, 26 Ill2d 392, 186 NE2d 319, is distinguishable from the instant case since in the cited case the petition was filed before the trial had begun and before the trial court had ruled on any substantive issues.

■ The fact that the prosecution nolled the manslaughter count of the indictment after the jury had been impanelled and sworn does not constitute reversible error. In People v. Hines, 30 Ill2d 152, 195 NE2d 712, the State's Attorney nolled a narcotics possession count after the jury had been impanelled and after evidence had been heard. The defendant was convicted of the sale and dispensing of a narcotic drug. On page 156, the Supreme Court said:

> "It is contended by the defendant that he could be placed in double jeopardy by the State's nolle prossing of count II. The jury had already been impanelled and evidence heard prior to the possession count being nolled. The claim of the possibility of double jeopardy is without merit. Defendant could

31

not be subsequently reindicted and retried for the nolled charge."

■■ Another argument advanced by the defendant is that the denial of his request for a sanity hearing violated due process of law. This request was made after the court had denied a motion for change of venue following a plea of guilty by the codefendant. The trial court alluded to a dilatory purpose in making the request after these events had occurred and noted that this request was made for the first time after the case had been in his court for one year. The defense counsel's reason for requesting the hearing was that his client was uncooperative and he doubted whether the defendant could understand the nature of the charge. The trial judge noted that the defendant had rationally discussed a possible plea of guilty with his attorney. It is within the discretion of the trial judge to decide whether the facts and circumstances raise a bona fide doubt of the defendant's sanity so as to require a hearing. (People v. Pridgen, 37 Ill2d 295, 226 NE2d 598; People v. Milligan, 28 Ill2d 203, 190 NE2d 753.) Upon a review of the facts and circumstances in this case, we cannot conclude that the trial judge abused his discretion in denying the defendant's request for a Behavior Clinic Examination. See People v. Foley, 28 Ill2d 426, 192 NE2d 850; People v. Cleggett, 22 Ill2d 471, 177 NE2d 187.

■ The defendant next argues that he was wrongfully denied the right to examine documents held by the prosecution. Specifically, the defendant asserts as error the denial of his requests relative to statements by Colleen Hutto Gochenour, Leonard White, James Glover and Officer John Loftus. It is settled in Illinois that the State is required on demand of the defendant to produce for impeachment purposes specific statements in its possession made by a State's witness which have been established to exist and which are the witness' own words or substantially verbatim. People v. Moses, 11 Ill2d 84,

142 NE2d 1; People v. Wolff, 19 Ill2d 318, 167 NE2d 197; People v. Neiman, 30 Ill2d 393, 197 NE2d 8.

■ Colleen Gochenour merely testified as a "life and death" witness for the State. After her direct examination, the witness stated that she was not sure whether she had given a statement to the police and the State's Attorney denied having any written statements made to the police. The record does not indicate that the defense counsel then requested that either he or the court examine the State's Attorney's or the police files. The trial judge said that it was not necessary for the prosecution to offer to check through the files since the purpose of the witness' testimony was simply to establish that she saw him alive and then saw him dead and therefore, there was no disputed testimony which could be impeached. In any event, the defendant was not denied his right to examine documents the very existence of which was not demonstrated. See People v. Wright, 30 Ill2d 519, 198 NE2d 316.

■ The defendant also unsuccessfully attempted to have produced "another report" containing a memorandum of conversations between Leonard White and the police. The defendant was furnished with a report which contained the statements of White to the State's Attorney. However, at a point in the trial, the court discovered a memorandum of conversations between White and Officer Loftus and this report was supplied to the defendant thereby curing any error which might have initially resulted in refusing its production.

■ Another police officer, James Glover, simply testified on direct examination that he found the victim lying on the ground at the dock and also found a bloodied knife near his side. The defendant, on cross-examination, demanded the Officer's street report. The court denied the request saying: "Well, I don't think counsel is entitled to the Police Report of the case. This officer's testimony is very simple and right to the point. You may cross-

33

examine him." It is difficult to see how this simple and direct testimony was susceptible to impeachment. We fail to see how the defendant was prejudicially affected by such a denial.

It should be noted that these requested statements did not in any way pertain to such a crucial issue as the identification of the accused as was the issue before the court in the Moses, Wolff, and Wright decisions. Upon a review of the entire record, we fail to see how any or all of the rejected evidence could in any way have affected the verdict, and therefore the rejection of the defendant's requests did not prejudice him so as to require a reversal of this judgment. See People v. Wolff, supra.

Upon cross-examination of the defendant, the State attempted to impeach the defendant by confronting him with answers he had purportedly made to specific questions at the Coroner's Inquest. The defendant denied that he had talked to any truck driver on the evening in question and also denied that he had ever touched the victim. The defendant stated that he did not know whether he made inconsistent answers to these questions. The State made no attempt to prove the alleged impeaching statements. Once the foundation for impeachment by prior inconsistent statements has been laid, it is incumbent upon counsel, having laid such foundation, to offer proof of the alleged impeaching statements. Schoolfield v. Witkowski, 54 Ill App2d 111, 203 NE2d 460; People v. Irish, 77 Ill App2d 67, 222 NE2d 114; Miller v. Chicago Transit Authority, 3 Ill App2d 223, 121 NE2d 348.

However, such a failure to prove the impeachment does not of necessity constitute reversible error. (People v. Sanders, 357 Ill 610, 192 NE 697; Schoolfield v. Witkowski, supra.) In view of the additional evidence in the record and in view of minimal importance of the aforementioned questions and answers, we conclude that

the State's failure to prove the impeaching statements was not reversible error.

The defendant further contends that he was prejudiced by the trial court's allowing Officer Loftus to testify to a statement made by Leonard White which clearly inculpated the defendant. The statement was initially admitted over objection by the defendant. After the direct examination of the defendant, the court reversed itself and sustained the defendant's motion to strike that portion of Officer Loftus' testimony and instructed the jury to disregard it.

The defendant argues that even though the statement was made by White in the presence of the defendant, there was not sufficient evidence to show that the defendant assented to the statement so as to make the statement admissible against him as his own statement by adoption. We agree that the defendant's statements and actions immediately following White's statement to the police negated any indication that he assented to the veracity of White's statement. Therefore, the admission of White's statement to Officer Loftus was error. However, the question still unanswered under the facts in this case is whether it constitutes reversible error. In Bruton v. United States, 391 US 123, the court reiterated the rule announced in Pointer v. Texas, 380 US 400, in which it said that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him, which is secured by the Sixth Amendment. In the Bruton decision, the court overruled the rule laid down in Delli Paoli v. United States, 352 US 232, which decided that the conviction of a defendant in a joint trial need not be set aside where the jury was instructed that a codefendant's confession inculpating the defendant had to be disregarded in determining his guilt or innocence. In Bruton, on page 126, the court said:

35

"We hold that, because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of Evans' confession in this joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment. We therefore overrule Delli Paoli and reverse."

The Supreme Court in Roberts v. Russell, 392 US 293, announced that the rule set forth in Bruton was to be applied retroactively, both to state and federal prosecutions, and, therefore is applicable to the case at bar.

The basis for the rule in Bruton is the denial of the defendant's right to confront and to cross-examine the party who was alleged to have made the admissions or confessions which inculpated the defendant. In the instant case, White became a witness for the State and testified to substantially the same matters that were contained in his statement to Officer Loftus. The defendant did confront and cross-examine White. At no time did White deny making the incriminating statement to the police and therefore his presence on the witness stand gave the defendant the opportunity to cross-examine White. In Bruton and Roberts, supra, such an opportunity was not present.

The case at bar is also distinguishable from this court's recent decision of People v. Scott and Walker, 100 Ill App 2d 473, 241 NE2d 579, in which we held that the use of a codefendant's extrajudicial inculpating statement was prejudicial error despite warnings by the court that the statement should be considered only as to the defendant who made the statement. In that case, we cited Bruton v. United States, supra, and Roberts v. Russell, supra. In Scott, the purported maker of the statement did take the stand as in the case at bar, but in that case, we emphasized that confrontation would be meaningless and

36

cross-examination would be futile since the maker denied making the incriminating statement. Since White not only did not deny making the incriminating statement but also basically reiterated it on the witness stand, cross-examination could not be deemed futile in the instant case. We therefore do not consider the admission of the testimony of Officer Loftus regarding White's statement to him to be reversible error.

The defendant raises an additional point which he fails to argue. Points not argued are waived. Supreme Court Rule 341(e)(7). Therefore, this court will not consider the defendant's final assignment of error.

We therefore conclude that the conviction for murder should be affirmed.

Affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.