THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GREGORY SMITH *et al.*, Defendants-Appellants.

First District (1st Division)   No. 77-1329

Opinion filed March 19, 1979.

James J. Doherty, Public Defender, of Chicago (Richard D. Kharas, Assistant Public Defender, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, J. Jonathan Regunberg, and Carol A. Kearney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Following a consolidated jury trial, defendants, Gregory Smith and Ernest Moore, a/k/a Anthony Smith, were each found guilty of two counts of armed robbery. The circuit court of Cook County entered judgment on the jury's verdict and sentenced Gregory Smith to a term of imprisonment from six to ten years. Anthony Smith received a sentence of from six years to six years and one day. Both defendants appeal.

Complainant, George Brown, testified that at the time of the incident,

November 20, 1975, he lived in an apartment in Chicago with Lynne Perry. Brown had known Anthony Smith for about five months and his brother Gregory Smith for roughly two weeks. Anthony Smith had visited Brown's apartment on five or six prior occasions and complainant considered him to be a social friend. Gregory Smith, however, had only been to Brown's apartment on one prior occasion.

Brown further testified that sometime after midnight on Thursday, November 20, 1975, he received a phone call at his apartment from Anthony Smith. Smith asked if he and his brother could visit Brown and Brown invited them over. Defendants arrived at complainant's home about 15 minutes later, accompanied by an unidentified man. Brown testified that the unknown man asked him for a glass of water. When Brown returned from the kitchen with the water, the third man was pointing a handgun at complainant. Complainant was warned that if he made any noise he would be killed.

At this point, Brown was directed to call Lynne Perry out of the bedroom. Brown and Perry were forced to lie down on the floor and their hands were tied behind their backs. Gregory Smith tied them up with an 18-foot extension line that he had pulled out of the phone. Gregory Smith then proceeded to take Brown's watch and ring. While the victims were being tied up, Anthony Smith disconnected Brown's stereo set and the man with the gun stood directly over the victims, pointing the gun at them.

Brown further testified that Anthony Smith next left with his stereo equipment and then Gregory Smith and the third man carried him into the back bedroom and threw him across the bed. They took a suede and a leather coat from the room and approximately $50 in currency from Brown. After complainant heard the men leave, he was able quickly to free his hands. Brown testified that he ran out the front door and saw the three men get into Perry's car which was parked across from the apartment. The robbers had apparently also taken Perry's car keys. Brown cried out for help as the men drove off. He then returned to his home, untied Perry and called the police.

About five minutes later two police officers arrived and Brown recounted the incident, listed missing items and supplied a description of the robbers. Brown also provided the police with defendants' names and Anthony Smith's address.

On the following day, Brown observed Perry's car near his home, notified the police and subsequently regained possession of the car. None of the other stolen items was recovered.

The defendants stipulated that on November 27, 1975, Brown and Perry, independently, identified both defendants from a group of police photographs. The defense further stipulated that on January 8, 1976,

Brown and Perry, also independently, identified Gregory Smith in a police lineup.

Finally, Brown testified that at the time of the robbery he worked part-time at Elman Shoes. He denied selling heroin to defendants and denied arranging a sale of heroin to Anthony Smith and a friend at a local bar. He testified that he never sold heroin.

On cross-examination, Brown testified that on two occasions prior to November 20, 1975, his stereo equipment was stolen. When asked specifically when those occasions were, Brown replied:

> "Roughly three weeks after I met Anthony the first time, I was broken in. He had occasion to be in my home again—."

Counsel for the defense objected, contending that the answer was not responsive. The record indicates that the trial court did not expressly rule on the objection. Nevertheless, through further questioning Brown supplied a more specific answer, stating that the first robbery occurred in June of 1975.

On redirect examination, the State also questioned Brown concerning whether the prior burglaries occurred after he had met Anthony Smith. Defense objections to this line of questioning were overruled and motions to strike Brown's testimony and for a mistrial were likewise denied by the trial court. Defendants maintained that Brown's testimony was volunteered, unresponsive and served to prejudice the jury by implying that Anthony Smith was involved in prior thefts from Brown's apartment. However, on redirect and recross examination, it was clearly established that the first burglary occurred three months rather than three weeks after Brown met Anthony Smith. Moreover, the trial court allowed the testimony to stand because it did not support an inference that defendant had committed the crimes.

Lynne Perry, Brown's girlfriend, next testified for the State and substantially corroborated Brown's account of the November 20, 1975, incident. On cross-examination, Perry stated that she had seen Anthony Smith four or five times before the incident, but knew neither Gregory Smith nor the third man. Perry also testified that she did not know the whereabouts of George Brown while she was at work on November 19, 1975. On redirect, Perry established that the prior two robberies of stereo equipment occurred on or about September 30, 1975, and October 31, 1975.

Officer Robert White and Investigator Donald Foulkes also testified for the State concerning their investigation of the robbery and the arrest of defendants. It is not necessary for our resolution of the issues presented in this appeal to recount their testimony, other than to state that no evidence technicians were called to the scene to take fingerprints and no prints were recovered from Perry's vehicle or Brown's apartment.

Renee Saunders was the first alibi witness for the defense. She testified that she had been acquainted with defendants for several years and that she was Anthony Smith's girlfriend. She said that at 2:30 p.m. on November 19, 1975, she was at Anthony Smith's home with him, together with certain relatives of both. At 2:30 p.m. Anthony Smith left his home alone, but returned at 4:30 p.m. At that time the same group of people remained at the Smith home. At approximately 6 p.m., a Donna Smith arrived home and the group watched television until 10:30 p.m.

Saunders further testified that at about 10:30 p.m. they went to Mr. George's Lounge, a local tavern. She testified that they met Gregory Smith at the lounge, stayed for about one hour and then went to her sister Tamitra's home. They arrived at Tamitra's at about midnight and, according to Saunders' testimony, stayed all night. Saunders expressly stated that during the early morning hours of November 20, 1975, the time of the robbery, both defendants remained at Tamitra's home. They were present in Tamitra's apartment when she awoke at 10 a.m. on November 20, 1975. She did not observe defendants in the presence of an unknown third man nor in possession of a gun.

Saunders offered additional testimony concerning her observations of a meeting between Anthony Smith and George Brown at Brown's apartment in early November of 1975. She testified that she observed Anthony Smith give Brown money and receive a foil packet.

On cross-examination, Saunders stated that after she went to sleep on the night of the incident she didn't know if anyone left the apartment. She did not remember what time she went to sleep that night. On redirect examination, Saunders testified that after the group arrived at her sister's apartment at about midnight, they listened to records for a couple of hours before retiring.

Defendant Anthony Smith testified corroborating Saunders' alibi account. He stated that he and Gregory Smith stayed at Tamitra's apartment from about 11:30 p.m. on November 19, 1975, until 10:30 or 11 a.m. the following day.

Defendant also testified that during the first week of November of 1975, he purchased a tinfoil packet of heroin from George Brown. This transaction occurred at Brown's home and was witnessed by Saunders. Defendant testified that he had purchased heroin wrapped in tinfoil from Brown on approximately 20 to 25 occasions at Brown's home and at Mr. George's Lounge. He maintained that the purchase made during the first week in November was the last time he was in Brown's apartment.

Defendant Anthony Smith further testified that on November 19, 1975, at about 3 p.m., he telephoned Brown. Defendant told Brown that he knew a man who wished to purchase narcotics from him. At about 3:10 p.m., both defendants and the buyer, Roger Lee, met Brown in Mr.

George's Lounge. The sale from Brown to Lee was consummated outside the lounge. Lee subsequently returned to Mr. George's and gave Anthony Smith a portion of the narcotics he had purchased. Brown did not return to the lounge and defendant maintained that he had no contacts with Brown or Perry after November 19, 1975.

Defendant testified concerning another drug purchase from Brown completed on November 16 or 17, 1975. The deal was made at Mr. George's in the presence of Lynne Perry.

On cross-examination, Anthony Smith stated that he had been a heroin addict from 1970 until March of 1976 and that his habit cost approximately $25 per day. At the time of trial, defendant was no longer a heroin user.

After the defense rested, a certified copy of Anthony Smith's conviction for possession of a controlled substance in June of 1974 was stipulated into evidence.

Over defendants' objections, the trial court agreed to give the jury People's Instruction No. 3, a cautionary instruction concerning the credibility of a narcotics addict.

Subsequent to receiving from the jury a note indicating deadlocked deliberations and pursuant to agreement between the trial court, the State and the defense, the court advised the jury to deliberate for another half-hour and gave the *Prim* instruction. (*People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731.) The jury subsequently returned a verdict of guilty of two counts of armed robbery against each defendant.

On appeal, defendants contend that the trial court committed reversible error: (1) in giving, over defendants' objections, an instruction concerning the lack of credibility of defendant Anthony Smith as one addicted to narcotics at the time of the offense; and (2) in permitting the State, over defense objections, improperly to suggest to the jury that Anthony Smith had been involved in prior burglaries at George Brown's premises.

We agree with defendants' contention that the trial court committed reversible error in giving the instruction complained of.

On cross-examination, Anthony Smith admitted that he was a heroin user from 1970 until March 1976. He further stated that his heroin habit required $25 of heroin per day. Smith maintained that at the time of the trial, November of 1976, he was no longer a heroin user.

Based on this testimony, the trial court gave People's non-IPI instruction founded upon *People v. Phillips* (1970), 126 Ill. App. 2d 179, 261 N.E.2d 469:

> "The Court instructs the jury that when determining the evidentiary worth of the testimony of a narcotics addict, the jury

must not judge the testimony as it would that of another type of witness. The jury must look upon the testimony of a narcotics addict with great suspicion and act upon it with great caution."

The trial court also gave People's IPI instruction (Illinois Pattern Jury Instructions, Criminal, No. 1.02 (2d ed. 1971)), including the passage concerning the credibility of defendant's testimony:

"You should judge the testimony of the defendant in the same manner as you judge the testimony of any other witness."

Defendants' objections to the *Phillips* instruction are twofold. Initially, they contend that when the above instructions were given in conjunction, a contradictory explanation of the law ensued, creating confusion for the jury. Secondly, defendants assert that *Phillips* is distinguishable and that the instruction is improperly founded and constitutes an incorrect statement of law. We agree that the instruction is an erroneous statement of law as applied to a criminal defendant and find it unnecessary to speculate as to any confusion caused by the instructions in tandem.

■■ The *instruction is a non-IPI instruction.* Supreme Court Rule 451(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 451(a)) provides:

"* * * Whenever IPI-Criminal does not contain an instruction on a subject on which the court determines that the jury should be instructed, the instruction given on that subject should be simple, brief, impartial, and free from argument."

As previously noted, the trial court gave the jury the standard IPI instruction regarding witness credibility and specifically concerning the credibility of defendant as a witness. (IPI Criminal No. 1.02.) The Committee Note to that instruction reads in relevant part:

"The Committee believes that this instruction contains those elements of credibility which are customarily present. However, should counsel or the court deem appropriate in a particular case the insertion of another element, it may be done without distorting the purpose of the instruction."

Thus, although the trial court was not precluded from using a non-IPI additional instruction concerning credibility, any instruction it gave had to be appropriate for the circumstances of the case and free from argument as to the correct principles of law applicable to the facts. *People v. Anthony* (1975), 30 Ill. App. 3d 464, 467, 334 N.E.2d 208.

■■ Illinois courts have uniformly held that drug addiction at the time of trial or when the crime occurred may affect credibility due to the impairment of testimonial powers. (See, *e.g., People v. Bazemore* (1962), 25 Ill. 2d 74, 182 N.E.2d 649; *People v. Smith* (1973), 12 Ill. App. 3d 488, 299 N.E.2d 506 (abstract); *People v. Phillips* (1970), 126 Ill. App. 2d 179,

261 N.E.2d 469.) Credibility is affected because addiction may influence the capacity of the witness to observe, to receive accurate impressions and retain them in his memory. Furthermore, addiction should be considered because of its effect upon the power and inclination of the witness to be truthful. *People v. Bazemore.*

Some courts have gone so far as to conclude that habitual users of narcotics become notorious liars. (*People v. Strother* (1972), 53 Ill. 2d 95, 290 N.E.2d 201; *People v. Smith* (1973), 12 Ill. App. 3d 488, 299 N.E.2d 506 (abstract).) On the other hand, the noncredibility of addicts is not universally accepted. McCormick on Evidence points out that: "It can scarcely be contended that there is enough scientific agreement to warrant judicial notice that addiction in and of itself usually affects credibility." McCormick, Evidence §45, at 95 (2d ed. 1972); see also 3A Wigmore, Evidence §934 (Chadbourn rev. 1970).

Accordingly, it is important to differentiate between (a) permitting the jury to hear evidence concerning a witness' addiction, and (b) judicial comment and instruction relevant to that testimony. Moreover, where a witness is a police informant as well as an addict, the possibility of untruthfulness is even greater. The addict-informer may act under the added compulsion of producing a victim (*i.e.*, arrestee) in order to perpetuate his status, curry police favor, including compensation, or escape his own legal dilemma. *People v. Bazemore.*

■ We also note that this instruction refers to a witness presently addicted to narcotics. On cross-examination, the only evidence produced by the State concerned the past addiction of defendant Anthony Smith and that his addiction had ceased approximately eight months prior to trial. Instructions must be supported by evidence introduced at trial (*People v. Mitchell* (1975), 34 Ill. App. 3d 311, 340 N.E.2d 226) and, since there was no testimony that defendant was addicted at the time of trial, the instruction was erroneous. *People v. Franz* (1977), 54 Ill. App. 3d 550, 368 N.E.2d 1091.

In addition, the court in *People v. Phillips* (1970), 126 Ill. App. 2d 179, 261 N.E.2d 469, was confronted with a situation distinguishable from the present case. Defendant was charged with the sale of narcotics. An addict-informer, who had been a "special employee" of the Chicago Police Department for over one year, testified for the State. Under these circumstances, the appellate court properly affirmed an instruction identical to the one given here.

Other cases relied upon by the State similarly concern addict-informers appearing as State witnesses. (*People v. Perkins* (1962), 26 Ill. 2d 230, 186 N.E.2d 330; *People v. Bazemore* (1962), 25 Ill. 2d 74, 182 N.E.2d 649.) We have found no cases, and the State has not cited any, where the *Phillips* instruction was given regarding a criminal defendant.

See Annot., 52 A.L.R.2d 848, §5 (1957); Annot., 65 A.L.R.3d 705, §§7, 21, 23 (1975).

The State contends that whenever any former or present narcotics addict testifies, the court may properly give a cautionary instruction, as in *Phillips.* They cite *People v. McKibben* (1974), 24 Ill. App. 3d 692, 321 N.E.2d 362, to rebut defendants' contention that the *Phillips* instruction is only applicable to addict-informers. While there are cases such as *McKibben* where the addict-witness is not an informer and although the instruction uses the general term "witness," such an instruction has never been upheld as applicable to a criminal defendant. (See *Neam v. State* (1972), 14 Md. App. 180, 286 A.2d 540, 546 (trial court erred by instructing jury they could consider defendant's addiction as it concerned credibility).) Illinois courts will not permit instructions which give undue prominence to the credibility or to the weight of the testimony of the accused. *People v. Hanson* (1935), 359 Ill. 266, 194 N.E. 520; *People v. Johnson* (1929), 333 Ill. 469, 165 N.E. 235.

Anthony Smith's credibility was vital to his defense. This case concerns directly conflicting accounts of an incident occurring on November 20, 1975. According to complainant George Brown and his girlfriend, Lynne Perry, defendants and a third unknown man came to their apartment in the early morning hours for a social visit. The unknown man pulled a gun on Brown and Perry and defendants tied them up and then took various valuable items from the apartment and Perry's car.

According to defendant Anthony Smith and his girlfriend, Renee Saunders, however, defendants were at Saunders' sister's apartment at the time of the alleged incident. Furthermore, Brown had been Anthony Smith's heroin supplier for about five months. Defendant testified he last saw Brown the afternoon before the incident, when defendant arranged a narcotics purchase for Roger Lee, a person not known to Brown.

On cross-examination, the State was given ample opportunity to impeach defendant concerning his heroin addiction. The testimony elicited demonstrated defendant had been a heroin addict from 1970 until March 1976 and that his habit cost $25 per day. Moreover, the State offered further impeachment by entering into evidence defendant's 1974 conviction for possession of a controlled substance.

■ Where the evidence is conflicting, it is especially important that proper instructions are given to guide the jury. (*People v. Plum* (1976), 44 Ill. App. 3d 922, 358 N.E.2d 1235.) The trial court instructed the jury that they were the sole judges of witness credibility and the weight to attribute to their testimony. (*People v. Jones* (1975), 60 Ill. 2d 300, 325 N.E.2d 601.) The instruction based on *Phillips* could be construed by the jury in this case as a statement by the trial judge that defendant's testimony was entitled to no weight. (See *People v. Drumwright* (1964), 48 Ill. App. 2d

392, 199 N.E.2d 282.) Although granting or denying cautionary instructions is generally a function vested within the trial court's discretion (*Drumwright*), the instruction is close to negating effectively defendant's right to testify in his defense.

■■ We note that several courts have concluded that addiction supports a less conclusive presumption concerning the credibility of a witness than *Phillips* implies. The fact that a witness is a narcotics addict has a bearing upon his credibility, but it does not follow that his testimony must be disbelieved; and his testimony cannot be disregarded if corroborated by other testimony and believable in light of circumstantial evidence presented or otherwise credible under the surrounding circumstances. *People v. Smith* (1973), 12 Ill. App. 3d 488, 299 N.E.2d 506 (abstract); *People v. Stewart* (1973), 12 Ill. App. 3d 226, 297 N.E.2d 391; *People v. Ramirez* (1970), 124 Ill. App. 2d 407, 260 N.E.2d 435.

■■ Since the instruction given unreasonably singles out the testimony of an addict-defendant as noncredible and usurps the function of the jury to decide credibility, we believe both defendants were actually prejudiced and that there is a reasonable belief that the jury's verdict may have resulted from the instruction. (*People v. Tranowski* (1960), 20 Ill. 2d 11, 169 N.E.2d 347, *cert. denied* (1960), 364 U.S. 923, 5 L. Ed. 2d 262, 81 S. Ct. 290, *cert. denied* (1962), 368 U.S. 978, 7 L. Ed. 2d 440, 82 S. Ct. 484.) This case must be reversed and remanded for a new trial.

With respect to defendants' second contention, counsel for the defense cross-examined complainant Brown about two prior occasions when his stereo equipment was stolen. Brown was asked whether he could specifically recall when those instances were. He replied, "Roughly three weeks after I met Anthony Smith the first time I was broken in. He had occasion to be in my home again—." Defendants objected on the ground that the testimony was unresponsive and the trial court never expressly ruled on their objection. Defendants contend that this volunteered statement implicates Anthony Smith in the two prior burglaries of Brown's apartment and prejudiced both defendants.

Defendants' theory was that on two prior occasions Brown had replaced the stolen stereo equipment with monies from insurance settlements. Yet, after the instant crime Brown did not purchase a new stereo set. The defense hoped to create the distorted inference that because Brown did not purchase a new stereo set this time his set had never been stolen. Questioning concerning insurance settlements received after the prior burglaries was objected to by the State on the grounds of relevancy. Following a sidebar, the court sustained the objection, thereby negating further efforts by defendants to explore their theory. Since we reverse because of an erroneous instruction and it is highly unlikely that defendants will again explore this nonrelevant area of questioning

upon retrial, we need not address their contention concerning the prejudicial inference of prior crimes.

Reversed and remanded for a new trial.

GOLDBERG, P. J., and McGLOON, J., concur.