THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD K. BRYANT, Defendant-Appellant.

First District (2nd Division)   No. 79-209

Opinion filed June 10, 1980.—Rehearing denied July 18, 1980.

Michael F. Harvey, of Wheaton, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Armand L. Andry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

On April 9, 1978, a security guard was shot five times and killed at a McDonald's restaurant in Chicago. On April 14, 1978, defendant was arrested in Chicago for a parole violation unrelated to this shooting and taken to the Joliet penitentiary. On April 18, 1978, an eyewitness to the shooting selected defendant's picture from a police mug book as the assailant. On April 21, 1978, defendant was brought from the Joliet Penitentiary to Chicago for a lineup pursuant to a writ of habeas corpus *ad testificandum*, issued by a circuit court judge in Cook County upon petition of the state's attorney. Defendant was placed in a lineup and identified as the assailant by several occurrence witnesses and was returned to the penitentiary that day. He was indicted for murder on April 28, 1978. He pleaded not guilty and entered an alibi defense. He was convicted in a jury trial and received a 25-year sentence. On appeal, defendant asserts that he was (a) illegally brought to the lineup, requiring the exclusion of the identification testimony at trial, (b) not proven guilty beyond a reasonable doubt, and (c) denied a fair and impartial trial. For the reasons set forth below, we affirm.

On July 12, 1978, defendant made a motion to suppress any reference to the lineup or any in-court identification by the witnesses who had viewed the lineup because it was suggestive and he was not advised of his right to counsel at that time. On July 13, 1978, a hearing was held on the motion. Defendant testified to the arrest for parole violation and removal to the Joliet Penitentiary. On April 21, 1978, Officer Michael Pochordo and another officer brought him from Joliet to a police station in Chicago where he participated in a lineup. He had not been advised prior to the lineup that he could have an attorney present. Officer Pochordo substantiated defendant's testimony as to his role and added that while on the way to Chicago, he gave defendant *Miranda* warnings. He had not specifically separated a warning for the interrogation and a warning for the lineup. An attempt was made at interrogation prior to the lineup, in which defendant and four other men were viewed by four or five persons.

Henry Wolff, an assistant state's attorney, testified that on April 20, 1978, he was assigned to the case in which defendant was a suspect. Wolff procured a grand jury number and a writ to have defendant brought from the penitentiary to Chicago. After the lineup, he requested that defendant be brought before the grand jury, but was advised that the grand jury had already retired. On cross-examination, Wolff identified the writ as one for habeas corpus *ad testificandum* directing the warden of the Department

of Corrections to release defendant for an appearance before Judge Fitzgerald and grand jury #291, but made no mention of a lineup. Wolff, on examination by the court, testified that defendant was brought before a lineup and not before Judge Fitzgerald and the grand jury as the writ directed because he felt it was unnecessary. Further, Judge Fitzgerald was not informed of the lineup in the petition for the writ because the State wanted to be "sure they had the right man." He intended also that defendant be brought before the grand jury that day. Other testimony given at this hearing will be discussed where relevant to other issues raised on appeal. The trial court found no constitutional violations and the motion to suppress was denied.

The trial was conducted on July 19, 1978. Michael Robinson testified for the State that on April 21, 1978, at 9 p.m., he went to a McDonald's restaurant where he saw defendant, his friend, involved in a fight with a security guard. He heard a shot, turned, and saw defendant with a gun in his hand, standing over the guard. Robinson and defendant left the restaurant and went down the street together. Two days later, defendant told Robinson and a "bunch" of other people that he "had to do it because he was coming at me." On cross-examination, Robinson testified that he was a member of the Disciples street gang when he first met defendant, who was a Blackstone Ranger. Robinson at the time of trial took heroin once each day. He placed marks on defendant's exhibit No. 1 for identification which purported to be a rough sketch of the McDonald's floor plan, indicating that defendant shot the guard near the middle of the restaurant. That day, defendant wore a black gangster hat and a black coat. Defendant is taller than Robinson. He knew the people present at the conversation he had with defendant two days after the shooting, but didn't know their names.

Valerie Washington, age 18, testified that she worked for McDonald's on April 9 at 9 p.m. She saw defendant, whom she identified in court, shaking a gun at the security guard. Three shots were fired; she ducked to the floor after the first shot. On April 18, after looking at a number of pictures at the police station, she identified defendant as the assailant. She again identified him at the lineup on April 21. On cross-examination she testified that she was working at the middle cash register; the guard was shot near the south exit; and defendant was not wearing a hat or glasses.

Darnell Craig, age 16, testified that at the time of the shooting, he was with Basil Brown at the north end of McDonald's. He saw defendant and another man at the south end of the store, and saw defendant point a gun at a security guard. He later heard three shots. He identified defendant at trial. On April 21, he identified defendant at a lineup. On cross-examination he testified that defendant was wearing a knee-length black coat, a hat and sunglasses. He observed defendant for about 10 seconds but did not see his full face.

Basil Brown, age 16, testified that he was with Darnell Craig when he saw a man, identified in court as defendant, with a gun talking to the security guard. He heard five shots. On cross-examination, he stated that the shooting occurred at the south exit and that he only saw defendant's profile, not a full face view, from 25 feet away.

The State rested and the defendant then called the following witnesses. Geneva Piphus testified that defendant was sleeping at her home on April 9, 1978, from 9 a.m. until midnight. On cross-examination she stated that she was home all day, but defendant was not in her presence for the entire period. Diane Faulkner testified that she was at the Piphus' home and saw defendant there between 10 a.m. and 11 a.m. Garcia Piphus, the son of Geneva Piphus, saw defendant several times sleeping that night between 8 and 10 p.m. Georgine Piphus saw defendant sleeping in the Piphus' home at 3 p.m. that day before she left for work; she again saw him in bed at midnight on her return.

Officer Donald Nichols testified that when he arrested defendant for the parole violation, defendant was not carrying a gun. Officer V. B. Hartford testified that defendant's exhibit No. 3 for identification accurately described McDonald's at the time of the shooting. When he arrived at the scene, he radioed the description of two men given to him by Marshalita Carter and Valerie Washington. The crime occurred at the south exit. Carter, an employee of the McDonald's, saw the full face of the man who did the shooting, but was now unable to describe him. She did not recognize anyone in the courtroom as being this man.

Defendant testified that he arrived at the Piphus' home at 9 a.m. on April 9 and left the next day. During that time, he slept, talked with friends and watched television. He did not shoot the guard.

## I.

Defendant first asserts that he was illegally brought to the lineup; therefore the lineup and in-court identifications by viewers of the lineup were improperly admitted at trial. The State responds that defendant's presence at the lineup was properly secured; in any event, the identification evidence should not be excluded because defendant would inevitably have been brought to the lineup by other legitimate means. Defendant's claim of illegality focuses on the wording of the habeas corpus writ which only directed that defendant be brought before a trial judge and a grand jury, not a lineup. The State argues that when the writ was sought the State intended that defendant be brought before the grand jury that day; this intention was frustrated when it was first learned after the lineup that the grand jury had already retired. Defendant conceded on oral argument that he would have no claim of illegality if he had been brought before the lineup in addition to the grand jury that day.

■■ Section 34 of the Illinois habeas corpus act (Ill. Rev. Stat. 1977, ch. 65, par. 34) vests authority in the courts to issue writs of habeas corpus "when necessary to bring before them any prisoner to testify * * *." We construe this statute to include removal of a prisoner from custody of the Department of Corrections for participation in a lineup. The State thus could have readily obtained a writ to remove defendant from the penitentiary and would have inevitably obtained defendant's presence at the lineup. (*United States ex rel. Owens v. Twomey* (7th Cir. 1974), 508 F.2d 858.) The identification testimony was properly received.

■■ Defendant argues that the inevitable discovery doctrine of *Twomey* injects the right to counsel issue into the present case under *Kirby v. Illinois* (1972), 406 U.S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877, because had defendant been removed from the penitentiary by an arrest warrant or by a writ specifying participation in a lineup, then criminal proceedings would have been initiated requiring notice of counsel at the lineup. Assuming, *arguendo*, error in failing to provide counsel to defendant at the lineup under these circumstances, the subsequent identifications and conviction are not necessarily vitiated. (*People v. Giovanetti* (1979), 70 Ill. App. 3d 275, 282-83, 387 N.E.2d 1071; *People v. Marshall* (1977), 47 Ill. App. 3d 784, 786, 365 N.E.2d 367; *People v. Shorter* (1978), 59 Ill. App. 3d 468, 477-78, 375 N.E.2d 513.) Although the testimony regarding the lineup identifications in the absence of a defense attorney may here be subject to the *per se* exclusionary rule, the in-court identifications of defendant, having been based upon origins independent of the lineup, do not require reversal on appeal. *Gilbert v. California* (1967), 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951; *Chapman v. California* (1967), 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710, 87 S. Ct. 824; *People v. McDonald* (1975), 62 Ill. 2d 448, 453-54, 343 N.E.2d 489.

## II.

Defendant's reasonable doubt argument is based upon contradictions and inconsistencies in the identification testimony of witnesses Robinson, Washington, and Brown. Robinson's testimony is challenged because he testified that the shooting occurred in the middle of the restaurant, but other witnesses placed the shooting at the south exit door. He also argues that eyewitness testimony indicated that defendant left McDonald's with a taller man and because Robinson is in fact shorter, we must conclude that Robinson was not present at the time of the shooting. The State correctly asserts, however, that the record is not clear whether Robinson and defendant both left the restaurant at the same time. As has been frequently held, minor testimonial inconsistencies such as these do not raise a reasonable doubt. *People v. Rivera* (1975), 32 Ill. App. 3d 500, 336 N.E.2d 255.

■■ Because Robinson is a convicted thief, a member of a rival street gang, and a drug addict, defendant argues that *People v. McKibben* (1974), 24 Ill. App. 3d 692, 321 N.E.2d 362, requires reversal of the murder conviction. We disagree. Although the conviction was reversed in *McKibben* where the identification witness was a drug addict, the court also relied on many other facts. The witness there was the only identification witness, had sight in only one eye, had taken heroin the day before the observation, had been drinking vodka when he witnessed the crime, had not previously known the defendant, and had made the observation under poor lighting conditions. In the instant case, the jury was apprised of Robinson's heroin use, prior conviction, and gang membership, and it was within the jury's province to weigh these factors in determining his credibility.

■■ Washington's testimony is questioned because only she testified that defendant was not wearing glasses or a hat at the time of the shooting. Discrepancies in testimony concerning attire do not destroy the credibility of a witness. (*People v. Marbley* (1975), 34 Ill. App. 3d 434, 340 N.E.2d 247.) Alleged prior inconsistent statements made by Washington are not supported by the record. Defendant also misconstrues Brown's testimony. Although Brown identified defendant in court, it is urged that he was previously unable to identify him at the suppression hearing. Brown did not express some doubt at the suppression hearing, but he did not say that he could not identify defendant. Furthermore, the jury was apprised of this previous doubt.

### III.

■■ Defendant claims that he was deprived of a fair and impartial trial, first, because he was denied inquiry into relevant areas at the motion to suppress. A review of the record shows that defendant had ample opportunity to question the witnesses concerning the circumstances which existed at the time of the shooting as well as all phases of the lineup. He next argues that he was denied compulsory process of a witness at trial because one Georgina Butler was subpoenaed to appear at trial and when she did not appear, he requested a continuance which was denied. The record is unclear as to whether Butler was actually under subpoena to appear at the trial. On the day of trial, defense counsel informed the court that Butler had told him earlier that morning she would appear, but she had not yet done so. More importantly, counsel did not request an order compelling her appearance. It cannot therefore be said that defendant was denied compulsory process. See *People v. Hicks* (1971), 133 Ill. App. 2d 424, 273 N.E.2d 450.

■■ At trial, defendant tendered two exhibits, marked with a number of letters and undecipherable symbols without explanation thereon as to their meaning, purporting to be rough sketches of the McDonald's floor

plan in which relative positions of the witnesses and the assailant had been depicted. Although several witnesses did testify concerning the meaning of some of the markings, the trial court denied their admission in evidence, but allowed defendant's use of them in closing argument. Defendant now asserts that this limited use constituted error. We disagree. *People v. Hampton* (1969), 105 Ill. App. 2d 228, 245 N.E.2d 47, held that the trial court's exclusion of several proposed exhibits was properly within the court's discretion where, as here, exhibits were not self-explanatory, tended to be confusing, and were not drawn to scale.

■■ ■ By virtue of Robinson's admitted heroin use once per day at the time of trial, defendant tendered an instruction that "the testimony of a drug addict is to be scrutinized with great caution," which was refused. In *People v. Phillips* (1970), 126 Ill. App. 2d 179, 261 N.E.2d 469, an instruction was approved which indicated that the testimony of an addict is to be scrutinized with great caution and if the jury found that a witness was a drug addict or used narcotics at about the time of the alleged crime, such a finding would be an important factor going to the witness' credibility. The tendered instruction at bar did not focus upon drug addiction at the time of the observation, nor did it permit the jury to determine whether Robinson was a drug addict, and was properly refused. (*People v. Smith* (1979), 70 Ill. App. 3d 250, 257, 387 N.E.2d 901.) An instruction which cautioned the jury concerning the tender age of several of the witnesses was also properly refused since the youngest witness here was 15 years old. *People v. Tucker* (1971), 3 Ill. App. 3d 152, 278 N.E.2d 516.

■■ Defendant lastly argues that the prosecution asked a prejudicial question during cross-examination and made a number of prejudicial statements in closing argument. Defendant urges that a question put to a defense witness was prejudicial because the State did not complete an attempted impeachment by introducing evidence of the impeaching statement during rebuttal. Failure to offer proof of such an alleged inconsistent statement after laying the foundation does not constitute reversible error where the impeaching testimony is, as here, of minimal importance and other evidence in the record substantiates a guilty verdict. *People v. Williams* (1969), 105 Ill. App. 2d 25, 245 N.E.2d 17.

■■ Alibi witnesses Garcia Piphus and Geneva Piphus testified that during the day and evening of April 9, 1978, they saw defendant with Charles Piphus at the Piphus' home. Charles Piphus was not called to testify by defendant and the prosecution commented in closing, "where is Charles? Charles is the one who spent all day with him in there supposedly?" Defendant claims that it is error for the prosecution to refer to the defendant's failure to call a witness. This position is not well founded. Defendant claimed that his activities with potential witnesses during a particular period of time established an alibi; his failure to

produce such witnesses may properly be noted by the State. *People v. Murray* (1975), 34 Ill. App. 3d 521, 544, 340 N.E.2d 186.

■■ In response to defense counsel's closing argument, the State asserted, without objection, that Robinson's failure to indicate who was present at the conversation he had with defendant two days after the shooting was "* * *because he didn't want Richard K. Bryant [defendant] or the Blackstone Rangers killing somebody else that was there." Defendant asserts that this comment was so prejudicial as to constitute plain error. The State argues that the comment was a fair inference from the testimony. The comment cannot be considered a fair inference; however, it does not reach the level of reversible error in light of defendant's failure to object at trial (*People v. Pearson* (1972), 52 Ill. 2d 260, 269, 287 N.E.2d 715; *People v. Daniels* (1979), 76 Ill. App. 3d 646, 653, 395 N.E.2d 163) and the overwhelming evidence of defendant's guilt (*People v. Dyer* (1977), 47 Ill. App. 3d 63, 361 N.E.2d 770; *People v. Lewis* (1976), 38 Ill. App. 3d 995, 349 N.E.2d 528).

For the reasons set forth, we must affirm the jury verdict and conviction.

Affirmed.

PERLIN, P. J., and DOWNING, J., concur.