THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STEVE ROBINSON, Defendant-Appellant.

First District (2nd Division) No. 79-2487

Opinion filed February 23, 1982.

James J. Doherty, Public Defender, of Chicago (Marc Fogelberg, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, James S. Veldman, and Ann L. Benedek, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

At the commencement of defendant's trial for armed robbery and murder, for which offenses he was convicted, prospective jurors were questioned with regard to their views on capital punishment. Sixteen of such jurors were excused for cause because of their opposition to the death sentence. When the State elected not to seek the death penalty, defendant was sentenced to 60 years in the penitentiary for armed robbery and life imprisonment for murder. He appeals.

The issues presented by the appeal include whether: the death qualification of a jury is permissible at the guilt stage under the Illinois death penalty statute (Ill. Rev. Stat. 1977, ch. 38, par. 9—1); defendant

was properly charged with armed robbery by information, whereas he had been charged only with murder in the preliminary complaint filed; and the trial court properly refused to instruct the jury concerning the testimony of a narcotics addict. For the reasons which follow, we affirm.

The preliminary complaint charged defendant with the murder of Kadir Hosein ("victim"). The State produced one witness at the preliminary hearing, Fulton Nelson, who, on April 21, 1978, at about 9:30 p.m., saw a Checker cab parked in front of his house at 2844 W. Walnut Street, in Chicago. He was on his way to buy some beer. A woman, Renee Record, was standing outside the cab. After walking 50 feet, Nelson heard a shot and turned in the direction of the cab. Thereafter, he heard a second shot and saw defendant leave the cab. Record and defendant ran past him toward Lake Street, and he thereafter continued on his errand. The court found probable cause with respect to the murder charge.

The State subsequently filed a four-count information containing two counts of murder, a third count of murder based upon the felony murder doctrine and a fourth count of armed robbery. Defendant moved to dismiss the armed robbery charge because there had been no probable cause finding thereon nor any evidence relating to that charge presented at the preliminary hearing. The motion was denied.

During argument preliminary to trial, the State advised the court that it would seek the death penalty unless something happened during the trial which would change that intent. The defense moved to prohibit prospective jurors from being interrogated on their views of the death penalty at the guilt phase of the trial and sought to require a bifurcated hearing, provided for by statute (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(d)), so as to avoid "Witherspooning" the jury. That defense motion was denied.

The only witnesses to testify at trial were produced by the State. Their testimony included police descriptions of their investigations upon responding to the call of a man shot in a taxi at 2844 W. Walnut Street, Chicago, at 9:40 p.m. on April 21, 1978. The victim was found slumped over in the front seat of the cab, bleeding profusely from the forehead. The cab was partially on the curb with its engine running and the driver's window shattered. Two .45-caliber casings were recovered from the street nearby, and a spent bullet was recovered from the floor of the driver's compartment of the cab. About two weeks later, a .45-caliber automatic was recovered from a person who loaned defendant's brother $60 and took the gun as collateral. The spent bullet and two casings were found to have been fired from the recovered automatic.

State witnesses as to the occurrence described the events involved in the shooting. The thrust of their testimony was that defendant and Renee Record were seen getting out of the cab at the time in question. De-

fendant was seen snatching something from the victim who was heard to say "I ain't got no more money." The victim returned to the cab, put it in gear and was then shot by defendant. The cab rolled across the street over the curb and into a tree. Defendant and Record fled.

Mary Record, Renee's mother, testified that Renee had been a heroin addict for two years and on the night of the shooting had left her house at about 9 p.m. She next spoke to her daughter on April 30, 1978. She arranged a meeting with Renee and defendant at 87th Street and the Dan Ryan Expressway, where arrests were effected.

Renee Record testified that when arrested she was currently charged with two armed robberies in which she admitted participation. She was testifying for the prosecution in order to lessen her sentence. She had known and lived with defendant for three years and, in April 1978, had been addicted to heroin for the previous three years. After leaving her mother's house on April 21 she and defendant were dropped off downtown and thereafter caught a Checker cab. They directed the driver to Walnut and Mozart Streets where Renee's grandmother lived. There, Renee got out of the cab and heard a shot from inside the vehicle. She saw defendant and the driver fighting, reentered the cab and grabbed the driver around the waist. The latter stopped fighting and they all emerged from the cab. Defendant asked if she "got the money," to which she responded "no" and defendant said "damn." The victim then told defendant that the latter had all the money he had. Defendant told the victim to get back into the cab and told Renee to go on ahead. Renee heard the cab door slam and then heard a shot, turned around and saw defendant with a gun in his hand and the cab rolling slowly. The second day after the shooting she saw defendant give his gun to his brother, Terry. He told Terry to sell the gun for him. Later that day his brother gave defendant some money.

Another witness testified that on April 24, 1978, defendant's brother came to his office with a .45-caliber automatic. He gave the brother $60 and the gun was taken as collateral. The police subsequently came and took the gun from him.

Defendant's motion for a directed verdict at the close of the State's case was denied. No evidence was offered by the defense, aside from a stipulation. The jury found defendant guilty of armed robbery and murder, and he was sentenced as first noted in the opinion.

I

The defense maintains that "death qualification" of potential jurors at the guilt stage of trial is impermissible in Illinois under the Illinois death penalty statute and the sixth amendment to the United States Constitution. Defendant acknowledges that the prosecution is entitled to exclude such

jurors as are opposed to capital punishment in all cases and those whose views on capital punishment would impair their impartiality in deciding guilt or innocence, from a jury considering a case in which a death sentence may be sought, citing *Witherspoon v. Illinois* (1968), 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770. Nevertheless, because the death penalty statute provides for a bifurcation of trial and sentencing, and authorizes selection of a new jury at the sentencing stage for "good cause shown" (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(d)(2)(C)), the defense maintains that the State's rights may be protected and a biased jury avoided if the jury is qualified as to this issue after, instead of before, conviction.

The supreme court of Illinois has recently twice considered the bifurcated trial procedure suggested by defendant, in *People v. Lewis* (1981), 88 Ill. 2d 129, 420 N.E.2d 1346, and in *People v. Gaines* (1981), 88 Ill. 2d 342. In *Lewis*, as here, the defendant argued that a second *voir dire* examination be routinely conducted before the sentencing phase of a murder case in which the prosecutor seeks the death penalty. The court held there that in the absence of a second jury, the previous jury impaneled at the guilt stage would be in a position to consider the entire record and thereby allow a more perceptive and complete analysis of aggravating and mitigating factors, even in cases where no evidence was presented in that phase by the defendant.

The defense also argued in *Lewis* that qualifying the jury in compliance with *Witherspoon* rules results in a conviction-prone jury. The court first noted that although a jury may be qualified in violation of *Witherspoon*, the validity of the conviction would not necessarily be affected, citing *Adams v. Texas* (1980), 448 U.S. 38, 65 L. Ed. 2d 581, 100 S. Ct. 2521; *People v. Wright* (1974), 56 Ill. 2d 523, 535, 309 N.E.2d 537; *People v. Clark* (1972), 52 Ill. 2d 374, 392-93, 288 N.E.2d 363; *People v. Brooks* (1972), 51 Ill. 2d 156, 167, 281 N.E.2d 326. The court then observed that cited studies reveal very limited and small variations in results which were not persuasive of the allegation that qualifying a jury in accord with the principles of *Witherspoon* results in a jury biased in favor of conviction.

In *People v. Gaines*, the supreme court questioned whether there was power to adopt a procedure requiring that a new jury be impaneled for a sentencing hearing in every case under section 9—1(d) and observed that its adoption could present potential constitutional problems, citing *People v. Lewis*. The supreme court also rejected the related argument that a jury composed entirely of persons who are not opposed to the death penalty is "conviction-prone." 88 Ill. 2d 342, 358. Accord, *People v. Person* (1981), 102 Ill. App. 3d 474; and *People v. Hamilton* (1981), 100 Ill. App. 3d 942, 427 N.E.2d 388.

■■ Defendant would distinguish *People v. Lewis* and *People v. Gaines* on the ground that in each of those cases the death penalty was actually sought, whereas here the prosecution, although stating the intent to seek the death penalty and thereby excluding jurors under *Witherspoon*, elected, after the guilt stage, not to do so. In light of the supreme court's finding in both *Lewis* and *Gaines* that no measurable potential prejudice arises at the guilt stage of the trial, defendant's argument here must fall. Further, at this point in the trial the jury would have no way of knowing whether the prosecution will exercise its discretion to pursue the death penalty or not, if, indeed, the prosecution itself knows. The jury in the case before us, therefore, was in no different position than were the juries in *Lewis* and *Gaines* at this stage of the trial.

■■ Defendant argues further that he was denied his right to a representative jury in the instant proceedings. In excluding for cause those jurors who were unalterably opposed to the death sentence, as well as peremptorily excluding jurors with scruples against it but who were not unalterably opposed thereto, defendant urges that the State deprived him of a jury composed of a representative cross-section of the community which hold those predilections. Defendant cites *Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692, which held that a Louisiana statute precluding women from serving as jurors deprived the defendant there of a jury selected from a representative cross-section of the jury-eligible community of which 53% was comprised of women. We see no legitimate analogy between sex based exclusion of jurors and the exclusion of jurors upon grounds that they would be objectively unable to consider a statutory alternative in making a decision as to whether or not a death penalty should be imposed upon a defendant at whose trial they were obligated to follow all constitutional laws of the State and of the United States. The death penalty has been upheld as constitutional in this State in *People v. Brownell* (1980), 79 Ill. 2d 508, 404 N.E.2d 181, *cert. dismissed* (1980), 449 U.S. 811, 66 L. Ed. 2d 14, 101 S. Ct. 59.

■■ The defense suggests that should the death qualification at the guilt stage be found permissible, defendant's rights nevertheless were violated when nine jurors were excluded in the case at bar who are alleged to have affirmatively stated that their position would not affect their partiality with respect to guilt or innocence. Our examination of the colloquies between court and jurors and counsel and jurors persuades us that the standards of *Witherspoon* were met in that the nine made unmistakably clear either that they would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or that their attitude toward the death penalty would prevent them from making an impartial decision as to defendant's guilt. (391 U.S. 510, 522-23 n.21, 20 L. Ed. 2d 776, 785 n.21,

88 S. Ct. 1770, 1777 n.21.) Each of the nine prospective jurors stated during *voir dire* that regardless of the facts which may be presented at trial the juror would vote against the death penalty. When asked whether they could be objective on the question of guilt or innocence, five of them were equivocal at best. We find no basis in the record to support defendant's argument here. See *People v. Gaines.*

## II

With respect to the argument that he was improperly charged with armed robbery by information although the preliminary complaint charged him only with murder, defendant argues that section 111—2(e) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 111—2(e)), which authorizes the State to add new charges beyond those brought in a complaint filed at the preliminary hearing, requires that evidence of the offense to be charged by information must have been adduced at the preliminary hearing before such new charges are brought. In *People v. Redmond* (1977), 67 Ill. 2d 242, 367 N.E.2d 703, the supreme court held that an information setting forth offenses not charged at the preliminary hearing but arising from the same transaction as that involved at the preliminary hearing does not violate due process. The court in *Redmond* emphasized that the purpose of a preliminary hearing in Illinois is to insure against unduly detaining a person in custody. An accused would be entitled to a second preliminary hearing only if the new charge was "completely unrelated" and "fundamentally different" from the offenses originally charged. (67 Ill. 2d 242, 248.) In *People v. Nash* (1980), 90 Ill. App. 3d 612, 413 N.E.2d 16, the appellate court rejected the defendant's argument there that a charge of aggravated kidnapping was improper where it was added to a charge of robbery after a preliminary hearing court found no probable cause for a charge of unlawful restraint, a lesser included offense of aggravated kidnapping. The appellate court reasoned that once probable cause had been found and the accused lawfully detained, the purpose of the preliminary hearing was satisfied.

■■ We find here both that the charge of armed robbery was related to the murder charge set forth in the preliminary complaint, and that the purpose of the preliminary hearing was satisfied by justifiably detaining defendant in custody.

## III

■■ As his last argument, defendant complains of the trial court's refusal to instruct the jury concerning the testimony of Renee Record, allegedly a drug addict. The instruction sought was as follows:

"The Court instructs the jury that when determining the evidentiary worth of the testimony of a narcotics addict, the jury must not judge the testimony as it would that of another type of witness.

> The jury must look upon the testimony of a narcotics addict with great suspicion and act upon it with great caution."

Defendant maintains that although the trial court did instruct the jury with general Illinois Pattern Jury Instructions, Criminal, No. 1.02 (1968) credibility instruction, narcotics addiction is appropriate for special instruction, and the instruction submitted by defendant is identical to that approved in *People v. Phillips* (1970), 126 Ill. App. 2d 179, 261 N.E.2d 469. The instruction in *Phillips*, however, was criticized in *People v. Smith* (1979), 70 Ill. App. 3d 250, 257, 387 N.E.2d 901, in which the court noted that the instruction, couched in language of the present, referred to a witness who in the past had been addicted to narcotics rather than at the time of the trial. An instruction such as this, phrased in the present tense, does not focus upon drug addiction at the time the crime is observed, and where, as here, no evidence is adduced supporting the inference of present use, it properly may be refused. (*People v. Banks* (1981), 98 Ill. App. 3d 556, 565-66, 424 N.E.2d 898; *People v. Bryant* (1980), 85 Ill. App. 3d 836, 843, 407 N.E.2d 597.) An instruction must be supported by evidence introduced at trial. *People v. Mitchell* (1975), 34 Ill. App. 3d 311, 320, 340 N.E.2d 226.

For the foregoing reasons, defendant's conviction and sentences cannot be disturbed.

Affirmed.

STAMOS, P. J. and DOWNING, J., concur.